# IN THE UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO.**_____ |
| | * | |
| | * | |
| **VS.** | * | **JUDGE** _____ |
| | * | |
| **LANE JUDE JEANSONNE** | * | **MAGISTRATE JUDGE**_____ |

## COMPLAINT

The United States of America ("Plaintiff") for the Farmers Home Administration ("FmHA") now known as Farm Service Agency (FSA) of the United States Department of Agriculture, through <u>William D. O'Regan III</u> as Attorney for the United States of America, for its cause of action alleges:

1.

Jurisdiction in this action is predicated on 28 U.S.C. **'** 1345.

2.

Plaintiff is the holder in due course and owner of those certain promissory notes ("Notes") made payable to the order of FSA by Defendant(s) described as follows:

| DATE | TYPE | FACE AMOUNT | INTEREST RATE |
|---|---|---|---|
| 06-11-2007 | EM (43-38) | $31,131.28 | 3.75% |
| 09-07-2006 | Resch | $31,067.33 | 3.75% |
| 08-19-2004 | Resch | $30,286.71 | 3.75% |
| 05-01-2003 | Resch | $48,600.00 | 3.75% |
| 06-11-2007 | FO (41-40) | $19,166.22 | 5.25% |
| 09-07-2006 | Resch | $18,431.85 | 5.25% |
| 08-19-2004 | Resch | $16,717.58 | 5.00% |
| 05-01-2003 | Resch | $15,684.34 | 5.25% |
| 04-04-2001 | Resch | $15,261.72 | 5.00% |
| 03-16-2000 | Resch | $14,462.90 | 5.25% |
| 05-27-1983 | Resch | $16,000.00 | 5.25% |

| 06-11-2007 | OL (44-41) | $60,368.51 | 5.00% |
| 09-07-2006 | Resch | $58,161.56 | 5.00% |
| 08-19-2004 | Resch | $54,265.13 | 3.50% |
| 05-01-2003 | Resch | $52,677.77 | 3.50% |
| 04-04-2001 | Resch | $51,839.41 | 5.00% |
| 03-16-2000 | Resch | $52,589.04 | 5.00% |
| 03-03-1999 | Resch | $50,000.00 | 5.00% |

Copies of each Note are attached as **Exhibits #1** in globo.

3.

In order to secure his payment of the Notes, Defendant executed in authentic form those acts of mortgage ("Mortgages") and a UCC-1 Security Agreement covering the property more fully described therein dated and filed for record in the mortgage records of Avoyelles Parish, Louisiana, as follows:

| DATE | REGISTRY NO. | MORTGAGE BOOK/PAGE |
| --- | --- | --- |
| 04-04-2001 | 01-002434 | 94/612 |
| 05-01-2003 | 03003377 | 120/818 |
| 02-16-2006 | 00001239 | 553/458 |
| 09-07-2006 | 00006431 | 568/78 |
| 10-24-2002 | 05-022550 | |

Copies of each Mortgage and Security Agreement and Continuations are attached as **Exhibit #2** in globo.

4.

Defendant is in default on payment due under the Notes, the entire balance is now due and payable as a result of acceleration of maturity of the unpaid principal and interest by Plaintiff or by virtue of the terms for payment of the Notes, and all conditions precedent to the commencement of this action have been satisfied.

5.

There is presently due and outstanding under the Notes and advances unpaid principal and interest accrued to December 31, 2017, in the following amounts:

| LOAN CODE | UNPAID PRINCIPAL | UNPAID INTEREST | DAILY ACCRUAL |
|---|---|---|---|
| 43-38 | $21,479.85 | $   643.26 | $2.2068 |
| 41-40 | $14,729.31 | $  1,188.26 | $2.1186 |
| 44-41 | $46,081.00 | $ 11,684.37 | $6.3125 |

**WHEREFORE, PLAINTIFF PRAYS** for judgment in its favor against Defendant, for the amount(s) due and owing Plaintiff as set forth in Paragraph 5 above, plus additional interest to which Plaintiff may be entitled and all costs of this action;

**PLAINTIFF FURTHER PRAYS** that the Mortgages be recognized and maintained upon the property subject to the Mortgages, and that said property be sold, **with appraisal** and according to law, at public auction to the highest bidder, and that out of the proceeds of said sale the Plaintiff be paid in preference and priority to all other persons whosoever the amount of its claim in accordance with the terms of the Mortgages, and that the amount realized from said sale be credited **pro tanto** upon the amount of the judgment herein; and

**PLAINTIFF FURTHER PRAYS** for all order and decrees necessary in the premises, and for all general and equitable relief to which it may be entitled.

RESPECTFULLY SUBMITTED,

UNITED STATES OF AMERICA

BY:	/s/ William D. O'Regan III
	William D. O'Regan III
	1107 Main Street
	Laplace, LA   70068
	Bar Roll Number:      10231

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
Lane Jude Jeansonne1

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Avoyelles
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
1107 Main Street, LaPlace, LA, 70068, (985) 652-6476

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
USC 28:1345fc

Brief description of cause:
Foreclosure

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
82,290.16

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
March 7, 2018

SIGNATURE OF ATTORNEY OF RECORD
*William D. Regan III*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

 (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

 (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
 United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
 United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
 Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
 Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
 Original Proceedings. (1) Cases which originate in the United States district courts.
 Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
 Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
 Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
 Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
 Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
 Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
 **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
 Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
 Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN |
|---|
| Type: ___EM___  ☑ Regular |
| ☐ Limited Resource |
| Pursuant to: |
| ☐ Consolidated Farm & Rural Development Act |
| ☑ Emergency Agricultural Credit Adjustment Act of 1978 |

| 1. Name | |
|---|---|
| LANE JUDE JEANSONNE | |

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-437157228 | JUNE 11, 2007 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 43 | 38 |

**9. ACTION REQUIRING NOTE**

| | | | |
|---|---|---|---|
| ☐ Initial loan | | ☑ Rescheduling | |
| ☐ Subsequent loan | | ☐ Reamortization | |
| ☐ Consolidated & subsequent loan | | ☐ Credit sale | |
| ☐ Consolidation | | ☐ Deferred payments | |
| ☐ Conservation easement | | ☐ Debt write down | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in __313 NORTH MONROE STREET, SUITE 3, MARKSVILLE LA  71351_____

_____ , or at such other place as the Government may later designate in writing, the principal sum of

__THIRTY ONE THOUSAND ONE HUNDRED THIRTY ONE & 28/100  - - - - - - - - - - - - - - - - - - - - - - - - - - -__ dollars

($__31,131.28_____), plus interest on the unpaid principal balance at the **RATE** of

__THREE & THREE-FOURTHS_____ percent (____3.75__%) per annum and

__N/A_____ dollars ($_____)

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in __FIFTEEN_____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | | |
|---|---|---|---|---|
| $ 2,752.00 | on JANUARY 01, 2008 | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |

and $__2,752.00_____ thereafter on __JANUARY 1ST_____ of each __YEAR_____ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable __FIFTEEN_____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 43-31 | $ 31,067.33 | 3.75 % | 09-07-06 | LANE  JEANSONNE | 01-01-2021 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.*

FSA-1940-17 (10-26-99)                                                      Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

LANE JUDE JEANSONNE                                        *(Borrower)*

JEANNE JEANSONNE                                    (CO-BORROWER)

3055 HIGHWAY 107 SOUTH

COTTONPORT, LA 71327

**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | **TOTAL** | $ | |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

## PROMISSORY NOTE

| 8. **KIND OF LOAN** |
|---|
| Type: ___EM___   ☑ Regular |
| ☐ Limited Resource |
| Pursuant to: |
| ☑ Consolidated Farm & Rural Development Act |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

| 1. Name |
|---|
| LANE JUDE JEANSONNE |

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-437157228 | SEPTEMBER 7, 2006 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 43 | |

| 9. **ACTION REQUIRING NOTE** | | |
|---|---|---|
| ☐ Initial loan | ☑ Rescheduling |
| ☐ Subsequent loan | ☐ Reamortization |
| ☐ Consolidated & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☐ Deferred payments |
| ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in __313 NORTH MONROE STREET, SUITE 3, MARKSVILLE  LA  71351__

_____ , or at such other place as the Government may later designate in writing, the principal sum of

___THIRTY ONE THOUSAND SIXTY SEVEN & 33/100  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -___ dollars

($ __31,067.33__ ), plus interest on the unpaid principal balance at the **RATE** of

___THREE & THREE-FOURTHS___ percent ( __3.75__ %) per annum and

__N/A__ dollars ($_____)

of Noncapitalized interest.  If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address.  The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in __FIFTEEN__ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ __2,746.00__ on __JANUARY 1, 2007__ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

and $ __2,746.00__ thereafter on __JANUARY 1ST__ of each __YEAR__ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable __FIFTEEN__ years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government.  Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note.  Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 43-24 | $ 30,286.71 | 3.75 % | 08-19-04 | LANE JEANSONNE | 01-01-2019 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                    Page 3 of 3

   **HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

   **DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

   This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.


Presentment, protest, and notice are waived.


(SEAL)                                        _Lane Jude Jeansonne_ _____
                                              LANE JUDE JEANSONNE              (Borrower)
                                              _Jeanne Louis Jeansonne_ _____
                                              JEANNE LOUIS JEANSONNE        (CO-BORROWER)

                                              | 3055 HIGHWAY 107 SOUTH |
                                              | COTTONPORT,  LA  71327 |


## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | TOTAL $ |  |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 1. Name | |
|---|---|
| | JEANSONNE, Lane J. |

| 2. State | 3. County |
|---|---|
| Louisiana | Avoyelles |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-0437157228 | August 19, 2004 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 43 | |

**8. KIND OF LOAN**

Type: __EM__     [X] Regular

[ ] Limited Resource

Pursuant to:

[X] Consolidated Farm & Rural Development Act

[ ] Emergency Agricultural Credit Adjustment Act of 1978

**9. ACTION REQUIRING NOTE**

| | | | |
|---|---|---|---|
| [ ] Initial loan | | [X] Rescheduling | |
| [ ] Subsequent loan | | [ ] Reamortization | |
| [ ] Consolidated & subsequent loan | | [ ] Credit sale | |
| [ ] Consolidation | | [ ] Deferred payments | |
| [ ] Conservation easement | | [ ] Debt write down | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in_____P.O. Box 490, Marksville, LA  71351_____

_____, or at such other place as the Government may later designate in writing, the principal sum of

THIRTY THOUSAND TWO HUNDRED EIGHTY-SIX AND .71/100------------------------------------------------------ dollars

($_____30,286.71__), plus interest on the unpaid principal balance at the **RATE** of

_____THREE AND THREE-FOURTHS_____percent (____3.75_%) per annum and

_____N/A_____dollars ($_____)

of Noncapitalized interest.  If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address.  The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in _____15_____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$_____1.00_on____01-01-05____ ; $_____2,902.00_ on _01-01-06_____;

$_____on_____ ; $_____ on _____;

$_____on_____ ; $_____ on _____;

$_____on_____ ; $_____ on _____;

$_____on_____ ; $_____ on _____;

$_____on_____ ; $_____ on _____;

and $____2,902.00_thereafter on __01-01-_____of each_____year_____until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable _____15_____ years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government.  Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note.  Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                                    Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 43-17 | $ 48,600.00 | 3.75 % | 05-01-03 | LANE J.  JEANSONNE | 01-01-23 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.*

**FSA-1940-17** (10-26-99)

Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

LANE J. JEANSONNE _(Borrower)_

JEANNE LOUIS JEANSONNE _(CO-Borrower)_

3055 Hwy 1075
Cottonport, LA 71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN |
|---|
| Type: __EM__  ☐ Regular |
| ☐ Limited Resource |
| Pursuant to: |
| ☐ Consolidated Farm & Rural Development Act |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

| 1. Name |
|---|
| LANE J. JEANSONNE |

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-437157228 | MAY 1, 2003 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 43 | 17 |

**9. ACTION REQUIRING NOTE**

| | |
|---|---|
| ☒ Initial loan | ☐ Rescheduling |
| ☐ Subsequent loan | ☐ Reamortization |
| ☐ Consolidated & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☐ Deferred payments |
| ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in __313 NORTH MONROE STREET, SUITE 3,  MARKSVILLE LA  71351__

_____ , or at such other place as the Government may later designate in writing, the principal sum of

__FORTY EIGHT THOUSAND SIX HUNDRED & NO/100__ ------------------------------------------------------- dollars

($ __48,600.00__ ---------------------- ), plus interest on the unpaid principal balance at the **RATE** of

__THREE & THREE-FOURTHS__ percent ( __3.75__ %) per annum and

__N/A__ dollars ($_____ )

of Noncapitalized interest.  If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address.  The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in __TWENTY__ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ __3,498.00__ on __JANUARY 1ST, 2004__ ; $_____ on ($_____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

and $_____ __3,498.00__ thereafter on __JANUARY 1ST__ of each __YEAR__ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable __TWENTY__ years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government.  Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note.  Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/<br>LOAN NO. | FACE AMOUNT | INTEREST<br>RATE | DATE<br>(include year) | ORIGINAL BORROWER | LAST INSTALL. DUE<br>(include year) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                                      Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

LANE J. JEANSONNE                                     (Borrower)

(SEAL)

JEANNE LOUIS JEANSONNE                    Co-(Borrower)

3055 HIGHWAY 107 SOUTH

COTTONPORT, LA 71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $ 48,600.00 | 05/01/03 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | **TOTAL** | $ 48,600.00 | |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN |
| --- |
| Type: __FO__     ☑ Regular |
| ☐ Limited Resource |
| Pursuant to: |
| ☑ Consolidated Farm & Rural Development Act |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

**1. Name**
LANE JUDE JEANSONNE

| 2. State | 3. County |
| --- | --- |
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
| --- | --- |
| 22-005-437157228 | JUNE 11, 2007 |

| 6. Fund Code | 7. Loan Number |
| --- | --- |
| 41 | 40 |

| 9. ACTION REQUIRING NOTE | |
| --- | --- |
| ☐ Initial loan | ☐ Rescheduling |
| ☐ Subsequent loan | ☑ Reamortization |
| ☐ Consolidated & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☐ Deferred payments |
| ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _313 NORTH MONROE STREET, SUITE 3, MARKSVILLE  LA  71351_

_____ , or at such other place as the Government may later designate in writing, the principal sum of

_NINETEEN THOUSAND ONE HUNDRED SIXTY SIX & 22/100  -----------------------------------_ dollars

($_19,166.22_____), plus interest on the unpaid principal balance at the **RATE** of

_FIVE & ONE-FOURTH_____ percent (_____5.25_%) per annum and

_N/A_____ dollars ($_____)

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST,** in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in _____FIFTEEN_____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$_1,878.00_____ on _JANUARY 01, 2008__ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

and $_1,878.00___ thereafter on _JANUARY 1ST___ of each _YEAR_____ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable _FIFTEEN_____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 41-33 | $ 18,431.85 | 5.25 % | 09-07-06 | LANE JEANSONNE | 01-01-22 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice and TDD).  USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                                      Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

LANE JUDE JEANSONNE _____ (Borrower)

JEANNE JEANSONNE _____ (CO-BORROWER)

3055 HIGHWAY 107 SOUTH

COTTONPORT,   LA   71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | **TOTAL** | $ | |

**REPRODUCE LOCALLY.** Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN | | |
|---|---|---|
| Type: FO | [✓] Regular | |
| | [ ] Limited Resource | |
| Pursuant to: | | |
| [✓] Consolidated Farm & Rural Development Act | | |
| [ ] Emergency Agricultural Credit Adjustment Act of 1978 | | |

**1. Name**  LANE JUDE JEANSONNE

| 2. State  LOUISIANA | 3. County  AVOYELLES |
|---|---|
| 4. Case Number  22-005-437157228 | 5. Date  SEPTEMBER 7, 2006 |
| 6. Fund Code  41 | 7. Loan Number |

**9. ACTION REQUIRING NOTE**

| | | |
|---|---|---|
| [ ] Initial loan | [ ] Rescheduling |
| [ ] Subsequent loan | [✓] Reamortization |
| [ ] Consolidated & subsequent loan | [ ] Credit sale |
| [ ] Consolidation | [ ] Deferred payments |
| [ ] Conservation easement | [ ] Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in   313 NORTH MONROE STREET, SUITE 3, MARKSVILLE LA 71351

_____ , or at such other place as the Government may later designate in writing, the principal sum of

EIGHTEEN THOUSAND FOUR HUNDRED THIRTY ONE & 85/100  ----------------------------- dollars

($  18,431.85 ), plus interest on the unpaid principal balance at the **RATE** of

FIVE & ONE-FOURTH percent (  5.25 %) per annum and

N/A dollars ($ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST,** in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in   SIXTEEN   installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | |
|---|---|---|---|
| $ 1,732.00 on JANUARY 1, 2007 | ; $ | on | ; |
| $ on | ; $ | on | ; |
| $ on | ; $ | on | ; |
| $ on | ; $ | on | ; |
| $ on | ; $ | on | ; |
| $ on | ; $ | on | ; |

and $ 1,732.00 thereafter on   JANUARY 1ST   of each   YEAR   until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable   SIXTEEN   years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                      Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/<br>LOAN NO. | FACE AMOUNT | INTEREST<br>RATE | DATE<br>(include year) | ORIGINAL BORROWER | LAST INSTALL. DUE<br>(include year) |
|---|---|---|---|---|---|
| 41-26 | $ 16,717.58 | 5.0 % | 08-19-04 | LANE JEANSONNE | 01-01-2022 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)

Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

_____   (Borrower)
DANE JUDE JEANSONNE

_____   (CO-BORROWER)
JEANNE LOUIS JEANSONNE

3055 HIGHWAY 107 SOUTH
_____
COTTONPORT,  LA  71327
_____

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | **TOTAL** | $ |  |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN |
|---|
| Type: **FO**   [X] Regular |
| [ ] Limited Resource |
| Pursuant to: |
| [X] Consolidated Farm & Rural Development Act |
| [ ] Emergency Agricultural Credit Adjustment Act of 1978 |

| 1. Name |
|---|
| JEANSONNE, Lane J. |

| 2. State | 3. County |
|---|---|
| Louisiana | Avoyelles |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-0437157228 | August 19, 2004 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 41 | |

**9. ACTION REQUIRING NOTE**

| | | | |
|---|---|---|---|
| [ ] Initial loan | | [X] Rescheduling | |
| [ ] Subsequent loan | | [ ] Reamortization | |
| [ ] Consolidated & subsequent loan | | [ ] Credit sale | |
| [ ] Consolidation | | [ ] Deferred payments | |
| [ ] Conservation easement | | [ ] Debt write down | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in ___P.O. Box 490, Marksville, LA  71351_____

_____, or at such other place as the Government may later designate in writing, the principal sum of

SIXTEEN THOUSAND SEVEN HUNDRED SEVENTEEN AND .58/100------------------------------------------------- dollars

($_____16,717.58____), plus interest on the unpaid principal balance at the **RATE** of

_____FIVE_____percent (_____5.0_%) per annum and

_____N/A_____dollars ($_____)

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in _____18_____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$_____1.00_on___01-01-05____ ; $_____1,533.00_on_01-01-06___ ;

$_____on_____ ; $_____on_____ ;

$_____on_____ ; $_____on_____ ;

$_____on_____ ; $_____on_____ ;

$_____on_____ ; $_____on_____ ;

$_____on_____ ; $_____on_____ ;

and $_____1,533.00_thereafter on__01-01-__of each___year___until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable _____18_____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                                   Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 41-20 | $ 15,684.34 | 5.25 % | 05-01-03 | LANE J. JEANSONNE | 01-01-23 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                                    Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

| | |
|---|---|
| LANE J. JEANSONNE | (Borrower) |
| JEANNE LOUIS JEANSONNE | (CO-Borrower) |

3055 Hwy 1075

Cottonport, LA  71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | **TOTAL** | $ | |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN |
|---|
| Type: FO     [X] Regular |
| [ ] Limited Resource |
| Pursuant to: |
| [X] Consolidated Farm & Rural Development Act |
| [ ] Emergency Agricultural Credit Adjustment Act of 1978 |

| 1. Name |
|---|
| LANE J. JEANSONNE |

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-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 | MAY 1, 2003 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 41 | |

| 9. ACTION REQUIRING NOTE | |
|---|---|
| [ ] Initial loan | [ ] Rescheduling |
| [ ] Subsequent loan | [X] Reamortization |
| [ ] Consolidated & subsequent loan | [ ] Credit sale |
| [ ] Consolidation | [ ] Deferred payments |
| [ ] Conservation easement | [ ] Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _____313 NORTH MONROE STREET, SUITE 3, MARKSVILLE LA 71351_____

_____ , or at such other place as the Government may later designate in writing, the principal sum of

_____FIFTEEN THOUSAND SIX HUNDRED EIGHTY FOUR & 34/100_____ dollars

($ _____15,684.34_____ ), plus interest on the unpaid principal balance at the **RATE** of

_____FIVE & ONE FOURTH_____ percent ( _____5.25_____ %) per annum and

_____N/A_____ dollars ($_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in _____TWENTY_____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ _____1,286.00_____ on _____JANUARY 1ST, 2004_____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

and $_____1,286.00_____ thereafter on_____JANUARY 1ST_____of each_____YEAR_____until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable _____TWENTY_____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                 Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 41-12 | $  15,261.72 | 5.0  % | 04/04/01 | LANE  JEANSONNE | 01/01/23 |
|  | $ |  % |  |  |  |
|  | $ |  % |  |  |  |
|  | $ |  % |  |  |  |
|  | $ |  % |  |  |  |
|  | $ |  % |  |  |  |
|  | $ |  % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

FSA-1940-17 (10-26-99)                                                                    Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

_Lane J. Jeansonne_
LANE J. JEANSONNE                                    (Borrower)

(SEAL)

_Jeanne Louis Jeansonne_
JEANNE LOUIS JEANSONNE                    Co - (Borrower)

3055 HIGHWAY 107 SOUTH

COTTONPORT,   LA  71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | TOTAL | $ |  |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

**PROMISSORY NOTE**

| 8. KIND OF LOAN | | |
|---|---|---|
| Type: __FO__ | ☐ Regular | |
| | ☒ Limited Resource | |

Pursuant to:

☒ Consolidated Farm & Rural Development Act

☐ Emergency Agricultural Credit Adjustment Act of 1978

| 1. Name | |
|---|---|
| LANE J. JEANSONNE | |
| 2. State LOUISIANA | 3. County AVOYELLES |
| 4. Case Number 22-005-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 | 5. Date APRIL 4, 2001 |
| 6. Fund Code 41 | 7. Loan Number |

**9. ACTION REQUIRING NOTE**

| | | |
|---|---|---|
| ☐ Initial loan | ☐ Rescheduling | |
| ☐ Subsequent loan | ☒ Reamortization | |
| ☐ Consolidated & subsequent loan | ☐ Credit sale | |
| ☐ Consolidation | ☐ Deferred payments | |
| ☐ Conservation easement | ☐ Debt write down | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _313 NORTH MONROE STREET, SUITE 3,  MARKSVILLE LA  71351_

_____ , or at such other place as the Government may later designate in writing, the principal sum of

_FIFTEEN THOUSAND TWO HUNDRED SIXTY ONE & 72/100_ -------------------------------------------------- dollars

($_15,261.72_ -------------------------), plus interest on the unpaid principal balance at the **RATE** of

_FIVE_ percent (_5.0_%) per annum and

_N/A_ dollars ($_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in _TWENTY-TWO_ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$_1,160.00_ on _JANUARY 01, 2002_ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

and $_1,160.00_ thereafter on _JANUARY 01,_ of each _YEAR_ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable _TWENTY-TWO_ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                          Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 41-06 | $  14,462.90 | 5.25  % | 3-16-00 | LANE JEANSONNE | JANUARY 01, 2023 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                    Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

_LANE J. JEANSONNE_                                    (Borrower)

(SEAL)

_JEANNE JEANSONNE_                              Co - (Borrower)

3055 HIGHWAY 107 SOUTH

COTTONPORT,   LA   71327

**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | TOTAL | $ |  |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN |
|---|
| Type: __FO__   ☐ Regular |
| ☒ Limited Resource |
| Pursuant to: |
| ☒ Consolidated Farm & Rural Development Act |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

**1. Name**
LANE JEANSONNE

**2. State**
LOUISIANA

**3. County**
AVOYELLES

**4. Case Number**
220050437157228

**5. Date**
MARCH 16, 2000

**6. Fund Code**
41

**7. Loan Number**
01

| 9. ACTION REQUIRING NOTE | |
|---|---|
| ☐ Initial loan | ☒ Rescheduling |
| ☐ Subsequent loan | ☐ Reamortization |
| ☐ Consolidated & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☐ Deferred payments |
| ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in ___313 North Monroe St., Suite 3. Marksville LA 71351___

_____ , or at such other place as the Government may later designate in writing, the principal sum of

___FOURTEEN THOUSAND FOUR HUNDRED SIXTY TWO & 90/100___ -------------------- dollars

($___14,462.90___ ----------------- ), plus interest on the unpaid principal balance at the **RATE** of

___FIVE & ONE FOURTH___ percent ( ___5.25___ %) per annum and

___N/A___ dollars ($_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in ___23___ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$___1,098.00___ on ___1-1-01___ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

and $___1,098.00___ thereafter on___1-1___of each ___year___ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ___23___ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 41-01 | $ 16,000.00 | 5.25 % | 5-27-83 | Lane Jeansonne | 1-1-23 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                                                    Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

_LANE J. JEANSONNE_                                                    (Borrower)

(SEAL)

_JEANNE JEANSONNE_                                             Co - (Borrower)

3055 Hwy. 107 S.

Cottonport,  LA  71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | **TOTAL** | $ |  |

## ADDENDUM TO THE PROMISSORY NOTE OR ASSUMPTION AGREEMENT FOR THE DISASTER SET-ASIDE PROGRAM

---------------------------------------------------------------

DATE <u>March 9, 1999</u>          CASE NUMBER <u>220050437157228</u>

NAME <u>LANE J. JEANSONNE  AND  JEANNE LOUIS JEANSONNE</u>

Promissory Note or Assumption Agreement:

| Fund Code | Loan Number | Date | Amount |
|-----------|-------------|------|--------|
| 41 | 01 | 5/27/83 | $16,000.00 |

This addendum amends the above described promissory note or assumption agreement to set forth the terms and conditions for set-aside of the installment described below.

Disaster Designation Number.....<u>S1234</u>

Date of Scheduled Installment Set-Aside...<u> 01/01/99</u>

Amount of Installment Set-Aside..........$<u> 1,040.00</u>

Any principal amount set-aside will continue to accrue interest at the same rate being charged the non-set-aside portion of the note.

This addendum does not change any of the terms or conditions of the promissory note or assumption agreement.

The undersigned borrower and any cosigners hereby agree to pay the installment being set-aside, plus any accrued interest on the principal amount set-aside, on or before the final due date of the loan, as set forth on the note or assumption agreement being amended.

If the promissory note or assumption agreement is later restructured through primary loan servicing, the addendum will automatically be considered cancelled and the amount set-aside will be included in the total debt restructured.

The undersigned borrower understands that by signing the addendum he/she is agreeing to the withdrawal of any pending request for primary and preservation loan servicing. This withdrawal does not affect the undersigned's future eligibility for primary and preservation loan servicing.

_____          _____
Borrower                          Borrower

USDA-FmHA
Form FmHA 1940-17
(Rev. 6-16-81)

**PROMISSORY NOTE**

| KIND OF LOAN |
| --- |
| Type: **FO - Lim. Res.** |
| Pursuant to: |
| ☒ Consolidated Farm & Rural Development |
| ☐ Emergency Agricultural Credit Adjustmen Act of 1978 |

| Name | | |
| --- | --- | --- |
| **Lane J. Jeansonne** | | |
| State | County | ACTION REQUIRING NOTE |
| **Louisiana** | **Avoyelles** | |
| Case No. | Date | ☒ Initial loan          ☐ Rescheduling |
| **22-05-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** | **5-27-83** | ☐ Subsequent loan    ☐ Reamortizatic |
| Fund Code | Loan No. | ☐ Consolidation &      ☐ Credit sale |
| **41** | **01** | subsequent loan |
| | | ☐ Deferred payr |
| | | ☐ Consolidation |

FOR VALUE RECEIVED, the undersigned Borrower(s) and any comakers jointly and severally promise to pay t order of the United States of America, acting through the Farmers Home Administration, United States Departme

Agriculture, (herein called the "Government"), or its assigns, at its office in **P. O. Box 330, Marksville**

**La. 71351**_____, or at such other place as the Government may hereafter designate in writing, the principal su

**SIXTEEN THOUSAND AND NO/100 — — — — — — — — — — — — — — — — — — — — — — — —** d

($ _____**16,000.00**_____ ), plus interest on the unpaid principal balance at the RA

**FIVE & ONE FOURTH**_____ percent (_____**5.2500**___%) per annu
this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quar by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new in rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of indicated above.

Principal and interest shall be paid in _____**41**_____ installments as indicated below, except as modified by a diff rate of interest, on or before the following dates:

$ ___**965.00**___ on January 1, 19 **84**; $ _____ on January 1, 19
$ _____ on January 1, 19 ___; $ _____ on January 1, 19
$ _____ on January 1, 19 ___; $ _____ on January 1, 19
$ _____ on January 1, 19 ___; $ _____ on January 1, 19
$ _____ on January 1, 19 ___; $ _____ on January 1, 19
$ _____ on January 1, 19 ___; $ _____ on January 1, 19
and $ ___**965.00**___ thereafter on January 1st of each year until the principal and interest are paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and able **40** years from the date of this note, and except that prepayments may be made as provided below. The consider for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced t Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given pro the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each adv from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Governme enter the amount(s) and date(s) of such advance(s) in the Records of Advances.

For each rescheduled, reamortized or consolidated note, interest accrued to the date of this instrument shall be a to principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as o date of receipt of the payment and then to principal.

*Position 2*                                    FmHA 1940-17 (Rev. 6-

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration rding to the source of funds involved, shall, after payment of interest, to be applied to the last installment to become under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

If the Government at any time assigns this note and insures the payment thereof, Borrower shall continue to make ments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments e by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except 'inal payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective of every payment made by Borrower, except payments retained and remitted by the Government on an installment due basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. effective date of any prepayment retained and remitted by the Government to the holder on an installment due date ; shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is :led accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any rity for the loan or otherwise expended under the terms of any security agreement or other instrument executed in rection with the loan evidenced hereby, at the option of the Government shall become a part of and bear interest at the : rate as the prinicpal of the debt evidenced hereby and be immediately due and payable by Borrower to the Government out demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not eased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm lership loan.

If "Consolidation and subsequent loan," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the tion Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|
| | % | , 19 | | , 19 |
| | % | , 19 | | , 19 |
| | % | , 19 | | , 19 |
| | % | , 19 | | , 19 |
| | % | , 19 | | , 19 |
| | % | , 19 | | , 19 |
| | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obliga- s are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain ffect and the security given for the loans evidenced by the described notes shall continue to remain as security for the evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in suf- nt amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

**DEFAULT:** Failure to pay when due any debt evidenced hereby or perform any covenant or agreement hereunder constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed he Government or securing or otherwise relating to such debt; and default under any such other instrument shall con- te default hereunder. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated n and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan idicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home iinistration and to its future regulations not inconsistent with the express provisions hereof.

r Presentment, protest, and notice are hereby waived.

(SEAL)

_Lane J. Jeansonne_
LANE J. JEANSONNE                    (Borr

(SEAL)

_____
                                     (Borr

Rt. 2, Box 200

Cottonport, La. 71327

_____

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| $ 16,000 | 5-27-83 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

*Position 2*                    FmHA 1940-17 (Rev 6-

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 1. Name |
|---|
| LANE JUDE JEANSONNE |

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-437157228 | JUNE 11, 2007 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 44 | 41 |

**8.  KIND OF LOAN**

Type:  OL    ☑ Regular

☐ Limited Resource

Pursuant to:

☑ Consolidated Farm & Rural Development Act

☐ Emergency Agricultural Credit Adjustment Act of 1978

**9. ACTION REQUIRING NOTE**

| | |
|---|---|
| ☐ Initial loan | ☑ Rescheduling |
| ☐ Subsequent loan | ☐ Reamortization |
| ☐ Consolidated & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☐ Deferred payments |
| ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in ___313 NORTH MONROE STREET, SUITE 3, MARKSVILLE LA  71351___

_____ , or at such other place as the Government may later designate in writing, the principal sum of

___SIXTY THOUSAND THREE HUNDRED SIXTY EIGHT & 51/100___ ------------------------------------ ___ dollars

($___60,368.51_____), plus interest on the unpaid principal balance at the **RATE** of

___FIVE_____ percent (___5.0___%) per annum and

___N/A_____ dollars ($_____ )

of Noncapitalized interest.  If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address.  The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in ___FIFTEEN___ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ 5,817.00 on JANUARY 01, 2008 ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

and $ 5,817.00 thereafter on JANUARY 1ST of each YEAR until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ___FIFTEEN___ years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government.  Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note.  Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument. ·

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 44-34 | $ 58,161.56 | 5.0 % | 09-07-06 | LANE JEANSONNE | 01-01-2021 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.*

FSA-1940-17 (10-26-99)                                                                     Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

_____  _(Borrower)_
LANE JUDE JEANSONNE

_____
JEANNE JEANSONNE                          (CO-BORROWER)

3055 HIGHWAY 107 SOUTH

COTTONPORT,   LA   71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | TOTAL | $ |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN | | |
|---|---|---|
| Type: ___OL___ | ☑ | Regular |
| | ☐ | Limited Resource |
| Pursuant to: | | |
| ☑ Consolidated Farm & Rural Development Act | | |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 | | |

| 1. Name |
|---|
| LANE JUDE JEANSONNE |

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-437157228 | SEPTEMBER 7, 2006 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 44 | |

**9. ACTION REQUIRING NOTE**

| | | | |
|---|---|---|---|
| ☐ | Initial loan | ☑ | Rescheduling |
| ☐ | Subsequent loan | ☐ | Reamortization |
| ☐ | Consolidated & subsequent loan | ☐ | Credit sale |
| ☐ | Consolidation | ☐ | Deferred payments |
| ☐ | Conservation easement | ☐ | Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in   313 NORTH MONROE STREET, SUITE 3, MARKSVILLE LA  71351

_____, or at such other place as the Government may later designate in writing, the principal sum of

FIFTY EIGHT THOUSAND ONE HUNDRED SIXTY ONE & 56/100  ------------------------ dollars

($ 58,161.56 ), plus interest on the unpaid principal balance at the **RATE** of

FIVE                                                   percent ( 5.0 %) per annum and

N/A                                                   dollars ($_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in   FIFTEEN   installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | | |
|---|---|---|---|---|
| $ 5,604.00 | on JANUARY 1, 2007 | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |
| $_____ | on _____ | ; $_____ | on _____ | ; |

and $ 5,604.00 thereafter on  JANUARY 1ST  of each  YEAR  until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable   FIFTEEN   years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                    Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 44-27 | $ 54,265.13 | 3.5 % | 08-19-04 | LANE  JEANSONNE | 01-01-2019 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.

FSA-1940-17 (10-26-99)                                                    Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

_Lane Jude Jeansonne_
LANE JUDE JEANSONNE                                    **(Borrower)**

_Jeanne Louis Jeansonne_
JEANNE LOUIS JEANSONNE                     (CO-BORROWER)

3055 HIGHWAY 107 SOUTH

COTTONPORT,   LA   71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 1. Name | |
|---|---|
| JEANSONNE, Lane J. | |

| 2. State | 3. County |
|---|---|
| Louisiana | Avoyelles |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-0437157228 | August 19, 2004 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 44 | |

**8. KIND OF LOAN**

Type: __OL__    [X] Regular

[ ] Limited Resource

Pursuant to:

[X] Consolidated Farm & Rural Development Act

[ ] Emergency Agricultural Credit Adjustment Act of 1978

**9. ACTION REQUIRING NOTE**

| | | | |
|---|---|---|---|
| [ ] Initial loan | | [X] Rescheduling | |
| [ ] Subsequent loan | | [ ] Reamortization | |
| [ ] Consolidated & subsequent loan | | [ ] Credit sale | |
| [ ] Consolidation | | [ ] Deferred payments | |
| [ ] Conservation easement | | [ ] Debt write down | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in ___P.O. Box 490, Marksville, LA  71351___

_____ , or at such other place as the Government may later designate in writing, the principal sum of

FIFTY-FOUR THOUSAND TWO HUNDRED SIXTY-FIVE AND .13/100---------------------------------------------- dollars

($_____54,265.13___ ), plus interest on the unpaid principal balance at the **RATE** of

_____THREE AND ONE-HALF_____percent (____3.50___%) per annum and

_____N/A_____dollars ($_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST,** in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in _____15_____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$_____1.00__on __01-01-05_____ ; $_____5,106.00__ on _01-01-06_____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

and $_____5,106.00__thereafter on __01-01-_____of each_____year_____until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable _____15_____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 44-21 | $ 52,677.77 | 3.5 % | 05-01-03 | LANE J. JEANSONNE | 01-01-18 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                     Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

_____
LANE J. JEANSONNE                                          *(Borrower)*

_____
JEANNE LOUISE JEANSONNE                              (CO-Borrower)

_____
3055 Hwy 1075
Cottonport, LA  71327
_____

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  |  | **TOTAL** $ |  |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN | | |
|---|---|---|
| Type: ___OL___ | [X] Regular | |
| | [ ] Limited Resource | |
| Pursuant to: | | |
| [X] Consolidated Farm & Rural Development Act | | |
| [ ] Emergency Agricultural Credit Adjustment Act of 1978 | | |

| 1. Name | LANE J. JEANSONNE |
|---|---|

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-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 | MAY 1, 2003 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 44 | |

### 9. ACTION REQUIRING NOTE

| | | | |
|---|---|---|---|
| [ ] Initial loan | | [X] Rescheduling | |
| [ ] Subsequent loan | | [ ] Reamortization | |
| [ ] Consolidated & subsequent loan | | [ ] Credit sale | |
| [ ] Consolidation | | [ ] Deferred payments | |
| [ ] Conservation easement | | [ ] Debt write down | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in____313 NORTH MONROE STREET, SUITE 3, MARKSVILLE LA  71351_____

_____, or at such other place as the Government may later designate in writing, the principal sum of

____FIFTY TWO THOUSAND SIX HUNDRED SEVENTY SEVEN & 77/100  -------------------------------------____ dollars

($_52,677.77  ----------------------------____), plus interest on the unpaid principal balance at the **RATE** of

_____THREE & ONE HALF_____percent (___3.5____%) per annum and

_____N/A_____dollars ($_____ )

of Noncapitalized interest.  If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address.  The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in ____FIFTEEN____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$_4,575.00____on ___JANUARY 1ST, 2004____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

and $_____4,575.00_____thereafter on___JANUARY 1ST___of each____YEAR_____until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ____FIFTEEN____ years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government.  Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note.  Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 44-13 | $   51,498.25 | 4.75   % | 04/04/01 | LANE  JEANSONNE | 01/01/16 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.*

FSA-1940-17 (10-26-99)                                                                    Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

_(signature)_
LANE J. JEANSONNE                                                            (Borrower)

(SEAL)

_(signature)_
JEANNE LOUIS JEANSONNE                                          Co - (Borrower)

3055 HIGHWAY 107 SOUTH

COTTONPORT, LA  71327


**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN | | |
|---|---|---|
| Type: OL | ☐ Regular | |
| | ☒ Limited Resource | |
| Pursuant to: | | |
| ☒ Consolidated Farm & Rural Development Act | | |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 | | |

| 1. Name |
|---|
| LANE J. JEANSONNE |

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 22-005-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 | APRIL 4, 2001 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 44 | |

| 9. ACTION REQUIRING NOTE | | | |
|---|---|---|---|
| ☐ Initial loan | | ☒ Rescheduling | |
| ☐ Subsequent loan | | ☐ Reamortization | |
| ☐ Consolidated & subsequent loan | | ☐ Credit sale | |
| ☐ Consolidation | | ☐ Deferred payments | |
| ☐ Conservation easement | | ☐ Debt write down | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in ___313 NORTH MONROE STREET, SUITE 3, MARKSVILLE LA 71351___

_____, or at such other place as the Government may later designate in writing, the principal sum of

___FIFTY ONE THOUSAND EIGHT HUNDRED THIRTY NINE & 41/100 -----------------------------------------___ dollars

($___51,839.41 ----------------------------------___), plus interest on the unpaid principal balance at the **RATE** of

_____FIVE_____percent (___5.0___%) per annum and

_____N/A_____dollars ($_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in ___FIFTEEN___ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$___4,995.00___on ___JANUARY 01, 2002___ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

$_____on _____ ; $_____ on _____ ;

and $___4,995.00___thereafter on___JANUARY 01,___of each___YEAR___until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ___FIFTEEN___ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                           Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/<br>LOAN NO. | FACE AMOUNT | INTEREST<br>RATE | DATE<br>(include year) | ORIGINAL BORROWER | LAST INSTALL. DUE<br>(include year) |
|---|---|---|---|---|---|
| 44-07 | $  52,589.04 | 5.0  % | 3-16-00 | LANE  JEANSONNE | JANUARY 01, 2015 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)

Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

LANE J. JEANSONNE                                    (Borrower)

(SEAL)

JEANNE JEANSONNE                          Co/ (Borrower)

3055 HIGHWAY 107 SOUTH

COTTONPORT,  LA  71327

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | TOTAL $ | |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 1. Name |
|---|
| LANE J. JEANSONNE |

| 2. State | 3. County |
|---|---|
| LOUISIANA | AVOYELLES |

| 4. Case Number | 5. Date |
|---|---|
| 220050437157228 | March 16, 2000 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 44 | 03 |

**8. KIND OF LOAN**

Type: OL   ☐ Regular

☒ Limited Resource

Pursuant to:

☒ Consolidated Farm & Rural Development Act

☐ Emergency Agricultural Credit Adjustment Act of 1978

**9. ACTION REQUIRING NOTE**

☐ Initial loan    ☒ Rescheduling
☐ Subsequent loan    ☐ Reamortization
☐ Consolidated &    ☐ Credit sale
   subsequent loan
☐ Consolidation    ☐ Deferred payments
☐ Conservation easement    ☐ Debt write down

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in 313 North Monroe St., Suite 3, Marksville LA 71351

_____ , or at such other place as the Government may later designate in writing, the principal sum of

FIFTY TWO THOUSAND FIVE HUNDRED EIGHTY NINE & 04/100 -------------------- dollars

($ 52,589.04 --------------- ), plus interest on the unpaid principal balance at the **RATE** of

five _____ percent ( 5.0 %) per annum and

N/A _____ dollars ($_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in 15 installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ 5,067.00 on 1-1-01 ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

$_____ on _____ ; $_____ on _____ ;

and $ 5,067.00 thereafter on 1-1 of each year until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable 15 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                    Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 44-03 | $ 50,000.00 | 5.0 % | 3-3-99 | Lane Jeansonne | 1-1-06 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.

FSA-1940-17 (10-26-99)                                                                          Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note.  **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

_____
LANE J. JEANSONNE                                        (Borrower)

_____
(SEAL)                                                   JEANNE JEANSONNE                          Co - (Borrower)

3055 Highway 107 S.
_____
Cottonport, LA  71327
_____

_____

**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | **TOTAL** | $ |  |

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

| KIND OF LOAN | |
|---|---|
| Type: ____ OL ____ | ☒ Regular |
| | ☐ Limited Resource |

**PROMISSORY NOTE**

Pursuant to:
☒ Consolidated Farm & Rural Development Act
☐ Emergency Agricultural Credit Adjustment Act of 1978

| Name | |
|---|---|
| LANE J. JEANSONNE | |

ACTION REQUIRING NOTE

| State | County |
|---|---|
| LOUISIANA | AVOYELLES |

| ☒ Initial loan | ☐ Rescheduling |
|---|---|
| ☐ Subsequent loan | ☐ Reamortization |

| Case No. | Date |
|---|---|
| 220050437157228 | MARCH 3, 1999 |

| ☐ Consolidated & subsequent loan | ☐ Credit sale |
|---|---|
| | ☐ Deferred payments |

| Fund Code | Loan No. |
|---|---|
| 44 | 03 |

| ☐ Consolidation | ☐ Debt write down |
|---|---|
| ☐ Conservation easement | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture,

(herein called the "Government"), or its assigns, at its office in ___P.O. Box 475, Marksville LA 71351___

_____, or at such other place as the Government may later designate in writing, the principal sum of

___FIFTY THOUSAND & NO/100___ ----------------------------------------- dollars

($ ___50,000.00___ --------------------), plus interest on the unpaid principal balance at the **RATE** of

___FIVE___ percent ( ___5.0___ %) per annum and

___N/A___ dollars ($ ___)

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in ___7___ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | |
|---|---|---|---|
| $ ___8,641.00___ | on ___1-1-00___ | ; $_____ | on _____ ; |
| $_____ | on _____ | ; $_____ | on _____ ; |
| $_____ | on _____ | ; $_____ | on _____ ; |
| $_____ | on _____ | ; $_____ | on _____ ; |
| $_____ | on _____ | ; $_____ | on _____ ; |
| $_____ | on _____ | ; $_____ | on _____ ; |

and $ ___8,641.00___ thereafter on ___1-1-___ of each ___year___ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ___7___ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

_Lane J. Jeansonne_
LANE J. JEANSONNE                                    ( Borrower )

(SEAL)

_Jeanne Louis Jeansonne_
JEANNE LOUIS JEANSONNE                       Co _ (Borrower)

3055 Highway 107 South

Cottonport  LA  71327

### RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | TOTAL | $ |  |

USDA
Form RD 1927-1 LA
(Rev. 11-99)

*Position 5*

# REAL ESTATE MORTGAGE FOR LOUISIANA

STATE OF LOUISIANA

PARISH OF _____ AVOYELLES

STATE OF LOUISIANA: HEREBY CERTIFY that the instrument is a true copy of the Original _____ No. 002434 consisting of _____ pages, on file and _____ in this office on _____ recorded in Conv. No. 94 spats and Book _____ at _____ page _____ of the records of Avoyelles Parish, Louisiana.

Given under my hand and seal of office at Marksville, Louisiana, this 4th day of Apr. 01

William Joe Campet
Deputy Clerk of Court

BE IT KNOWN that on the date hereinafter set forth before me

a notary public in and for the Parish of _____ Avoyelles _____ , State of Louisiana,

duly commissioned and qualified, came and appeared _____

LANE J. JEANSONNE & JEANNE JEANSONNE

( Husband and Wife )

of the Parish of _____ Avoyelles _____ , State of Louisiana, whose post office

address is 3055 Hwy. 107 S., Cottonport _____ , Louisiana _____ 71327 _____ .
herein called "Borrower", who declares and acknowledges indebtedness unto the United States of America, acting through the United States Department of Agriculture and its Parish office,

whose mailing address is P.O. Box 490, Marksville LA 71351 _____ , herein called the "Government" in the sum of Two Hundred Forty Five Thousand Two Hundred Seventy Two & 06/100 _____ Dollars ($ 245,272.06) the balance of unpaid principal remaining upon loan(s) to Borrower, with interest now due or to become due upon the principal, and upon any unpaid or deferred installments of interest added to the principal, which debts are evidenced by one or more certain promissory note (s) or assumption agreement (s) or any shared appreciation or recapture agreement, herein called "note" which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| April 4, 2001 | $ 51,839.41 | 5.0% | April 4, 2016 |
| April 4, 2001 | $ 69,264.97 | 5.0% | April 4, 2029 |
| April 4, 2001 | $ 15,261.72 | 5.0% | April 4, 2023 |
| April 4, 2001 | $108,905.96 | 3.75% | April 4, 2016 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in the Government regulations or the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Government;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument, this instrument shall secure payment of the note; but

And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to U.S.C. § 2001:

# Exhibit A-1

**Loan Applicant**
LANE J. JEANSONNE

**Address of Property**
20 acres W ½, NE 1/4, NW 1/4, Sect. 38, T1S,R4E, Ward 8

**Applicant for Title Examination**
LANE J. JEANSONNE

**County**
AVOYELLES

**State**
LOUISIANA

A certain tract or parcel of land containing 20 acres, being the West half of the Northeast Quarter of the Northwest Quarter of Section 38, Township 1 South, Range 4 East, Ward 8, Avoyelles Parish, Louisiana, as more fully shown on the Plat of Survey by Blanchard J. Marcharnd dated August 18, 1973 and recorded in Conveyance Book A-270, page 845. Being the property acquired by Robert J. Ducote from Hansen D. Bordelon, Jr., et al by sale dated December 8, 1975 and recorded in Conveyance Book A-270, page 842, all references being to the records of Avoyelles Parish, Louisiana.

# Exhibit B-1

| | |
|---|---|
| **Loan Applicant**<br>LANE J. JEANSONNE | **Address of Property**<br>NE 1/4 OF NE 1/4, Section 19, T1S, R5E, 70 X 200 ft. |
| **Applicant for Title Examination**<br>LANE J. JEANSONNE | **County**<br>AVOYELLES       **State**<br>LOUISIANA |

**LOT 1:** A certain tract or parcel of land with all buildings and improvements situated thereon, lying in the Northeast Quarter of the Northeast Quarter of SECTION 19, TOWNSHIP 1 SOUTH, RANGE 5 EAST, Avoyelles Parish, Louisiana, having a front of 70 feet, with a depth between parallel lines of 200 feet, and which is more particularly described as follows:  Commence at a point common to the center line of Bayou Choupique, the southeast corner of the herein described lot and property owned now or formerly by Ryan St. Romain, et al, thence proceed North along the boundary of property formerly belonging to Ryan St. Romain, et al, a distance of 200 feet to a point, thence westerly, a distance of 70 feet running parallel to the center line of Bayou Choupique, to a point, thence in a southern direction a distance of 200 feet, parallel to the boundary line lying between the herein described tract and the Ryan St. Romain, et al, property as aforesaid to the center line of Bayou Choupique, thence, in an easterly direction threading the center line of Bayou Choupique, a distance of 70 feet to the Point of Beginning.  Being bounded, now or formerly, as follows:  North and West by Louis St. Romain, Sr., et ux, South by Bayou Choupique, and East by Ryan St. Romain, et al.

Being a portion of the property acquired by Louis J. St. Romain, et ux, per Deed dated April 18, 1931, recorded in COB A-55, page 84, records of Avoyelles Parish, Louisiana, and acquired by Elaine St. Romain Jeansonne, per inheritance from the Estate of Louis St. Romain, Sr. and Esla Mayeux St. Romain (See Affidavit of Death Domicile and Heirship, recorded in COB A-366, page 605).

# Exhibit C-1

**Loan Applicant**
LANE J. JEANSONNE

**Address of Property**
N ½ of Section 19, T1S, R5E, Ward 8

**Applicant for Title Examination**
LANE J. JEANSONNE

**County**
AVOYELLES

**State**
LOUISIANA

LOT 2: A certain lot or parcel of land with all buildings and improvements thereon, situated in and forming a portion of the North Half of SECTION 19, TOWNSHIP 1 SOUTH, RANGE 5 EAST, Ward 8 Avoyelles Parish, Louisiana, and being more particularly described as follows, to-wit:

Begin at a point in the centerline of Bayou Choupique, said point being in common with the southeast corner of property belonging to Boley Caldwell and the southwest corner of the property belonging to Elaine St. Romain Jeansonne. From said Point of Beginning proceed North 0 degree, 07 minutes West for a distance of 250 feet to a point. From said point thence proceed in an easterly direction for a distance of sufficient to meet the western boundary of the property acquired by Lane J. Jeansonne by deed dated February 24, 1989, recorded in Conveyance Book A-374, Document No. 89-1273. From said point proceed in a southerly direction along the western line of Lane J. Jeansonne tract, described hereinabove to a point being common with the Southwestern boundary of the Lane J. Jeansonne tract hereinabove described and the centerline of Bayou Choupique. From said point proceed in a westerly direction along the southern boundary of the property belonging to Elaine St. Romain Jeansonne to a point, said point being the Point of Beginning.

Being a portion of the same property acquired by Louis St. Romain in an Act of Exchange dated June 23, 1944 and filed June 26, 1944 recorded in COB A-112, page 67, entry no. 85-386.

# Exhibit D-1 *cold TVKF*

**Loan Applicant**
LANE J. JEANSONNE

**Address of Property**
71.81 Acres Sections 25 & 30, T1S, R4E, Less & Except 1 acre.

**Applicant for Title Examination**
LANE J. JEANSONNE

**County**
AVOYELLES

**State**
LOUISIANA

A certain tract or parcel of land containing 71.81 acres, together with all the buildings and improvements thereon, situated 2 miles south of Cottonport in the Ninth Ward of Avoyelles Parish, Louisiana, lying in and forming portions of SECTIONS 25 & 30, TOWNSHIP 1 SOUTH, RANGE 4 EAST, and being bounded, now or formerly, on the North by lands of Dewey Jeansonne, L. Gauthier, Curtis Ducote and Lance Ducote, on the East by lands of L. Gauthier, Darrel Mayeux, Curtis Ducote, Stafford Coulon and Lance Ducote and a Parish Road, on the South by land of Stafford Coulon and Lot 11 of the Alfred Bordelon Partition, and on the West by a Canal, all as more particularly shown on a Plat of Survey made by Ralph L. Gagnard, Registered Land Surveyor, dated March 11, 1989, and further described, according to said survey, as follows: Commence at a point on the West line of the Parish Road marking the Northeast corner of Lot 11 of the Alfred Bordelon Partition and the Southeast corner of the tract herein described, and is hereinafter referred to as the Point of Beginning, and run North 0 degrees 30 minutes West 98 feet to a point; thence West 148 feet to a point; thence North 0 degrees 30 minutes West 148 feet to a point; thence East 148 feet to a point; thence North 0 degrees 30 feet West 595.5 feet to a point; thence West 1317.4 feet to a point; thence North 0 degrees 30 minutes West 550 feet to a point; thence East 1313.0 feet to a point; thence North 0 degrees 30 minutes West 50 feet to a point; thence West 239 feet to a point; thence North 1 degree 14 minutes West 256.8 feet to a point; thence North 5 degrees 15 minutes West 370 feet to a point; thence West 1046 feet to a point; thence North 2 degrees West 516 feet to a point; thence South 89 degrees West 26 feet to a point; thence North 2 degrees West 156 feet to a point; thence West 1006 feet to a point on the east line of a Canal; thence southeasterly following the meander of the Canal 2,951.5 feet to a point; thence South 0 degrees 20 minutes East 331.3 feet to a point; and thence 89 degrees 40 minutes East 1308.8 feet to the Point of Beginning. The foregoing property is subject to (a) drainage permit recorded in COB A-35, page 422 and J-1, page 688; (b) pipeline servitude in favor of United Gas Corp. recorded in COB A-228, page 487; and (c) servitude of passage in COB A-309, page 559. All recording references relate to the records of Avoyelles Parish, Louisiana.

LESS AND EXCEPT THE FOLLOWING DESCRIBED PROPERTY, TO-WIT: A certain tract of land presently owned by Lane Jeansonne and Jeanne Jeansonne located in SECTION 30, TOWNSHIP 1 SOUTH, RANGE 4 EAST, Avoyelles Parish, Louisiana, containing one acre more or less. Being fully described as follows: Starting at a point where the common boundary between the property of Paul Coulon and Lane Jeansonne intersects the Western boundary of the Brassette Lane rights of way; thence South along the Western edge of Brassette Lane a distance of 137.4 feet; to the Point of Beginning; thence South along the Western edge of the Brassette Lane a distance of 100.0 feet; thence from this point heading West a distance of 435.7 feet; thence from this point heading North a distance of 100.0 feet; thence from this point heading East a distance of 435.7 feet to the West edge of Brassette Lane right of way or the Point of Beginning. Being bounded, now or formerly, on the North, West and South by Lane Jeansonne and East by the Brassette Lane edge. See Plat of Survey by James W. Townsend, Registered Land Surveyor, dated August 10, 1995, of which copy attach.

A certain tract or parcel of land located in Section 30, T1S, R4E, Ward 9 of Avoyelles Parish, Louisiana containing 0.16 acres and designated as "Lot 1" on plat of survey by Carl J. Juneau, Professional Land Surveyor, dated January 2006 and attached hereto.  Now or formerly bounded on the North by Lane Jeansonne, South by Paul Smith, East by Lot 2 and West by Lane Jeansonne, Said Lot 1 measuring 200 feet on its East and West boundaries and 33.72 feet on its North and South Boundaries.  Being a portion of a 71.81 acre tract acquired by Lane J. Jeansonne, Et Ux from a Quitclaim Deed from the Farmer's Home Administration filed on June 22, 1989 in COB Book A-377 page 271 records of Avoyelles Parish, Louisiana.

A certain tract or parcel of land situated in Section 30 Township 1 South, Range 4 East, Ward 9 of Avoyelles Parish, containing 1.17 acres and designated as "Lot 2" on Plat of survey by Carl J. Juneau, dated January 2006 and attached hereto.  Being bounded now or formerly on the North by Lane Jeansonne, on the East by Lots 3 and 4, on the South by Paul Smith and on the West by Lot 1.  Said Lot 2 measuring 200 feet on its East and West Lines and 254 feet on its North and South Lines.  Being a portion of a 71.81 acre tract tract acquired by Lane J. Jeansonne, Et Ux from a Quitclaim Deed from the Farmer's Home Administration filed on June 22, 1989 in COB Book A-377 page 271 records of Avoyelles Parish, Louisiana.

A certain tract or parcel of land situated in Section 30, Township 1 South, Range 4 East, Ward 9 of Avoyelles Parish, containing 0.33 acres and designated as "Lot 3" on plat of survey by Carl J. Juneau, dated January 2006 and attached hereto.  Being bounded now or formerly on the North by Lot 4/Bobby Ducote, on the East by Brassette Lane, on the South by Paul Smith and on the West by Lot 2.  Said Lot 3 having a frontage on Brassette Lane of 98 feet and measuring 148 feet on its North and South lines.  Being a portion of a 71.81 acre tract acquired by Lane J. Jeansonne, Et Ux from a Quitclaim Deed from the Farmer's Home Administration filed on June 22, 1989 in COB Book A-377 page 271 records of Avoyelles Parish, Louisiana.

A certain tract or parcel of land together with all buildings and improvements thereon, containing 1 (one) acre more or less, situated in Section 30, Township 1 South, Range 4 East, Ward 9, Avoyelles Parish, Louisiana, and being further identified as Lot A 1.0 Ac, on that certain plat dated July 3, 2014 by Carl J. Juneau, Professional Land Surveyor.  Property being bounded now or formerly as follows:  North by Lane Jeansonne, on the East by Lot and Larry Lachney; on the South by Paul Smith and on the West by Lane Jeansonne.
Being a portion of a 71.81 acre tract of property acquired by Lane J. Jeansonne, Et Ux from the Farmer's Home Administration by Quitclaim Deed filed on June 22, 1989 and recorded in COB Book A-377 page 271, all records of Avoyelles Parish, Louisiana; and

A certain tract or parcel of land together will all buildings and improvements thereon, containing 1 (one) acre more or less, situated in Section 30, Township 1 South, Range 4 East, Ward 9, Avoyelles Parish, Louisiana, and being further identified as Lot B 1.0 Ac, on that certain plat dated July 3, 2014 by Carl J. Juneau, Professional Land Surveyor.  Property being bounded now or formerly as follows:  North by Lane Jeansonne, on the East by Brassette Lane; on the South by Larry Lachney and on the West by Lot A.  Bein a portion of a 71.81 acre tract of property acquired by Lane J. Jeansonne, Et Ux from the Farmer's Home Administration by Quitclaim Deed filed on June 22, 1989 and recorded in COB Book A-377 page 271; also being a portion of that property acquired by Lane Jeansonne, Et Ux from Larry Lachney by Act of Exchange filed February 16, 2006, recorded at Book 531 page 874 under instrumentnumber 2006-00001238; all records of Avoyelles Parish, Louisiana.

NOW, THEREFORE,  in consideration of the loan(s) and (a') at all times when the note is held by the Government, or in the event the Government should assign this instrument, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower declared that Borrower does by these presents specially mortgage, affect, and hypothecate unto and in favor of the Government the following-described property situated in the State of

Louisiana, Parish of _____Avoyelles_____.

This property is (is not) the family home.

RD 1927-1  LA (Rev. 11-99) Page 2 of 4

together with all rents and other issues thereof, and all buildings, improvements, fixtures, appurtenances, servitudes, water, water rights, ways, privileges, prescriptions, and advantages thereto including the right to mining products, gravel, oil, gas, coal or other minerals) belonging or in anywise appertaining, hereinafter referred to as "the property". The property is so to remain specially mortgaged, affected and hypothecated until the full and final payment of all indebtedness secured hereby and the performance and discharge of each and every condition, agreement and obligation, contingent or otherwise, contained herein or secured hereby, and Borrower binds and obligates Borrower not to sell, alienate, or encumber the property to the prejudice of this act.

This act of mortgage further secures an obligation of the mortgagors, or their assignees, in a maximum amount of five thousand dollars ($5,000.00) for reimbursement to mortgagees, or other holders of the note(s), for any sums paid for taxes, assessments, premiums of insurance or any expenses for repairs, care, maintenance or other protection of the security.

AND BORROWER, for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns, WARRANTS that Borrower has good right and lawful authority to mortgage the property described herein, and that the property is free and clear of any lien, charge, or encumbrance thereon or affecting the title thereto except as shown herein, and hereby COVENANTS AND AGREES:

(1) To pay promptly when due any indebtedness to the Government hereby secured.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) The Government may at any time pay any other amounts including advances for payments of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, assessments, levies, liabilities, obligations, and encumbrances of every nature whatsoever that affect the property or the Government's rights and interests therein under this mortgage and promptly deliver to the Government without demand receipts or other acceptable evidence of such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner, comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government-whether once or often-in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(16) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for

RD 1927-1 LA (Rev. 11-99) Page 3 of 4

loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19) Borrower declares that in favor of the Government, and of any and all future holder or holders of the obligations secured hereby, as regards the property herein mortgaged, Borrower waives any and all homestead exemptions to which Borrower is or may be entitled under the constitution and laws of the state of Louisiana.

(20) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation or appraisal, of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition for approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(21) Borrower further agrees that the loans secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

(22) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair or property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial statute, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial statute, age or national origin.

(23) This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(24) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to _____ and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the post office address shown above).

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Thus done and passed in ____Marksville____, Parish of ____Avoyelles____,

State of Louisiana, aforesaid, on this ____4th____, day of ____April____, ____2001____,

in the presence of the undersigned competent witnesses, who signed their names with the said appeares and me, notary, after due reading of the whole.

Witnesses:

_____  (Borrower)
LANE J. JEANSONNE

_____  (Co-Borrower)
JEANNE JEANSONNE

_____
Notary Public.

RD 1927-1 LA (Rev. 11-99) Page 4 of 4

USDA
Form RD 1927-1 LA
(Rev. 11-99)

Position 5

*12:00 P.m.*

# REAL ESTATE MORTGAGE FOR LOUISIANA

STATE OF LOUISIANA _____

PARISH OF _____ Avoyelles _____

STATE OF LOUISIANA: No. 03003377
PARISH OF AVOYELLES, I HEREBY CERTIFY that the foregoing
is a true copy of the Original No. _____ consisting of
_____ pages, on file and record in this office on
5-7-03 and recorded in Book 120 of Mortgage Page
and Book _____ of _____ page _____ of the records of Avoyelles
Parish Louisiana.
Given under my hand and seal of office at Marksville,
Louisiana, this 7 day of May 20 03
_____ Dolores P Harris _____
Deputy Clerk of Court

BE IT KNOWN that on the date hereinafter set forth before me

MONA J. TAYLOR

a notary public in and for the Parish of _____ Avoyelles _____ , State of Louisiana,

duly commissioned and qualified, came and appeared _____

Lane J. Jeansonne and Jeanne Louis Jeansonne

( Husband and Wife )

of the Parish of _____ Avoyelles _____ , State of Louisiana, whose post office

address is 2055 Highway 107 South, Cottonport _____ , Louisiana 71327 .
herein called "Borrower", who declares and acknowledges indebtedness unto the United States of America, acting through
the United States Department of Agriculture and its Parish office,

whose mailing address is P. O. Box 490, Marksville LA 71351 , herein called the "Gov-
ernment" in the sum of THREE HUNDRED TWENTY TWO THOUSAND
THREE HUNDRED NINETY THREE & 35/100 Dollars ($ 322,393.35 )
the balance of unpaid principal remaining upon loan(s) to Borrower, with interest now due or to become due upon the
principal, and upon any unpaid or deferred installments of interest added to the principal, which debts are evidenced by
one or more certain promissory note (s) or assumption agreement (s) or any shared appreciation or recapture agreement,
herein called "note" which has been executed by Borrower, is payable to the order of the Government, authorizes accelera-
tion of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| May 01, 2003 | $ 48,600.00 | 3.75% | May 01, 2023 |
| May 01, 2003 | $ 71,797.66 | 5.00% | May 01, 2029 |
| May 01, 2003 | $ 15,684.34 | 5.25% | May 01, 2023 |
| May 01, 2003 | $ 52,677.77 | 3.50% | May 01, 2018 |
| May 01, 2003 | $ 16,124.37 | 3.75% | May 01, 2018 |
| May 01, 2003 | $117,509.21 | 3.75% | May 01, 2018 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this
instrument may be increased as provided in the Government regulations or the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure
payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949,
or any other statutes administered by the Government;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the
Government, or in the event the Government should assign this instrument, this instrument shall secure payment of
the note; but

And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture
Agreement entered into pursuant to U.S.C. § 2001:

RD 1927-1 LA (Rev. 11-99) Page 1 of 4

NOW, THEREFORE,  in consideration of the loan(s) and (a') at all times when the note is held by the Government, or in the event the Government should assign this instrument, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower declared that Borrower does by these presents specially mortgage, affect, and hypothecate unto and in favor of the Government the following-described property situated in the State of

Louisiana, Parish of  _____Avoyelles_____.


See Attached Legal Description


This property is (is not) the family home.

together with all rents and other revenues or income therefrom, buildings, improvements, appurtenances, servitudes, water, water rights, ways, privileges, prescriptions, and advantages thereto including the right to mining products, gravel, oil, gas, coal or other minerals) belonging or in anywise appertaining, hereinafter referred to as "the property". The property is so to remain specially mortgaged, affected and hypothecated until the full and final payment of all indebtedness secured hereby and the performance and discharge of each and every condition, agreement and obligation, contingent or otherwise, contained herein or secured hereby, and Borrower binds and obligates Borrower not to sell, alienate, or encumber the property to the prejudice of this act.

This act of mortgage further secures an obligation of the mortgagors, or their assignees, in a maximum amount of five thousand dollars ($5,000.00) for reimbursement to mortgagees, or other holders of the note(s), for any sums paid for taxes, assessments, premiums of insurance or any expenses for repairs, care, maintenance or other protection of the security.

AND BORROWER, for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns, WARRANTS that Borrower has good right and lawful authority to mortgage the property described herein, and that the property is free and clear of any lien, charge, or encumbrance thereon or affecting the title thereto except as shown herein, and hereby COVENANTS AND AGREES:

(1)  To pay promptly when due any indebtedness to the Government hereby secured.

(2)  To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3)  If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)  The Government may at any time pay any other amounts including advances for payments of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)  All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)  To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)  To pay when due all taxes, assessments, levies, liabilities, obligations, and encumbrances of every nature whatsoever that affect the property or the Government's rights and interests therein under this mortgage and promptly deliver to the Government without demand receipts or other acceptable evidence of such payments.

(8)  To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)  To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner, comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided by  Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including  but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall .have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government-whether once or often-in exercising any right or remedy under this instrument, or otherwise afforded by  applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(16)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for

RD 1927-1  LA (Rev. 11-99) Page 3 of 4

loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance  of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19)  Borrower declares that in favor of the Government, and of any and all future holder or holders of the obligations secured hereby, as regards the property herein mortgaged, Borrower waives any and all homestead exemptions to which Borrower is or may be entitled under the constitution and laws of the state of Louisiana.

(20)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation or appraisal, of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition for approving a transfer of the property to a new Borrower.  Borrower expressly waives the benefit of any such State laws.

(21)  Borrower further agrees that the loans secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

(22)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair or property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial statute, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial statute, age or national origin.

(23)  This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(24)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to ——————————————— and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the post office address shown above).

(25)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Thus done and passed in ——— Marksville ———, Parish of ——— Avoyelles ———,

State of Louisiana, aforesaid, on this ——— 1st ———, day of ——— May ———, 2003 ,

in the presence of the undersigned competent witnesses, who signed their names with the said appears and me, notary, after due reading of the whole.

Witnesses:

_Germaine Mecke_

_Amanda Demard_

_Lane J. Jeansonne_
LANE J. JEANSONNE                      *(Borrower)*

_Jeanne Louis Jeansonne_
JEANNE LOUIS JEANSONNE       *(Co-Borrower)*

_Mona G._
                                                   *Notary Public.*

RD 1927-1  LA (Rev. 11-99) Page 4 of 4

# EXHIBIT "A"

**TRACT 1:**

**LOT 1:** A certain tract or parcel of land with all buildings and improvements situated thereon, lying in the Northeast Quarter of the Northeast Quarter of SECTION 19, TOWNSHIP 1 SOUTH, RANGE 5 EAST, Avoyelles Parish, Louisiana, having a front of 70 feet, with a depth between parallel lines of 200 feet, and which is more particularly described as follows: Commence at a point common to the center line of Bayou Choupique, the southeast corner of the herein described lot and property owned now or formerly by Ryan St. Romain, et al, thence proceed North along the boundary of property formerly belonging to Ryan St. Romain, et al, a distance of 200 feet to a point , thence westerly, a distance of 70 feet running parallel to the center line of Bayou Choupique, to a point, thence in a southern direction a distance of 200 feet, parallel to the boundary line lying between the herein described tract and the Ryan St. Romain, et al, property as aforesaid to the center line of Bayou Choupique, thence, in an easterly direction threading the center line of Bayou Choupique, a distance of 70 feet to the Point of Beginning. Being bounded, now or formerly, as follows: North and West by Louis St. Romain, Sr., et ux, South by Bayou Choupique, and East by Ryan St. Romain, et al.  Being a portion of the property acquired by Louis J. St. Romain, et ux, per Deed dated April 18, 1931, recorded in COB A-53, page 84, records of Avoyelles Parish, Louisiana, and acquired by Elaine St. Romain Jeansonne, per inheritance from the Estate of Louis St. Romain, Sr. and Esia Mayeux St. Romain (See Affidavit of Death Domicile and Heirship, recorded in COB A-366, page 605).

**LOT 2:** A certain lot or parcel of land with all buildings and improvements thereon, situated in and forming a portion of the North Half of SECTION 19, TOWNSHIP 1 SOUTH, RANGE 5 EAST, Ward 8 of Avoyelles Parish, Louisiana, and being more particularly described as follows, to-wit:

Begin at a point in the centerline of Bayou Choupique, said point being in common with the southeast corner of property belonging to Boley Caldwell and the southwest corner of the property belonging to Elaine St. Romain Jeansonne. From said Point of Beginning proceed North 0 degree, 07 minutes West for a distance of 250 feet to a point. From said point thence proceed in an easterly direction for a distance of sufficient to meet the western boundary of the property acquired by Lane J. Jeansonne by deed dated February 24, 1989, recorded in Conveyance Book A-374, Document No. 89-1273. From said point proceed in a southerly direction along the western line of Lane J. Jeansonne tract, described hereinabove to a point being common with the Southwestern boundary of the Lane J. Jeansonne tract hereinabove described and the centerline of Bayou Choupique. From said point proceed in a westerly direction along the southern boundary of the property belonging to Elaine St. Romain Jeansonne to a point, said point being the Point of Beginning.

Being a portion of the same property acquired by Louis St. Romain in an Act of Exchange dated June 23, 1944 and filed June 26, 1944 recorded in COB A-112, page 67, entry no. 85-386.

Signed for identification with Act of Mortgage executed this__1st__ day of May, 2003 by Lane J. Jeansonne and Jeanne Louis Jeansonne toand in favor of the United States of America acting through the United States Department of Agriculture in the sum of $322,393.35.

LANE J. JEANSONNE
(SS#:)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)

JEANNE LOUIS JEANSONNE

# EXHIBIT "A" (cont.)

**TRACT 2:**

A certain tract or parcel of land containing 20 acres, being the West Half of the Northeast Quarter of the Northwest Quarter of SECTION 38, TOWNSHIP 1 SOUTH, RANGE 4 EAST, Ward 8, Avoyelles Parish, Louisiana, as more fully shown on the Plat of Survey by Blanchard J. Marchand dated August 18, 1973 and recorded in Conveyance Book A-270, page 845.  Being the property acquired by Robert J. Ducote from Hansen D. Bordelon, Jr., et al by sale dated December 8, 1975 and recorded in Conveyance Book A-270, page 842, all references being to the records of Avoyelles Parish, Louisiana.

**TRACT 3:**

A certain tract or parcel of land containing 71.81 acres, together with all the buildings and improvements thereon, situated 2 miles south of Cottonport in the Ninth Ward of Avoyelles Parish, Louisiana, lying in and forming portions of SECTIONS 25 & 30, TOWNSHIP 1 SOUTH, RANGE 4 EAST, and being bounded, now or formerly, on the North by lands of Dewey Jeansonne, L. Gauthier, Curtis Ducote and Lance Ducote, on the East by lands of L. Gauthier, Darrel Mayeux, Curtis Ducote, Stafford Coulon and Lance Ducote and a Parish Road, on the South by land of Stafford Coulon and Lot 11 of the Alfred Bordelon Partition, and on the West by a Canal, all as more particularly shown on a Plat of Survey made by Ralph L. Gagnard, Registered Land Surveyor, dated March 11, 1989, and further described, according to said survey, as follows:  Commence at a point on the West line of the Parish Road marking the Northeast corner of Lot 11 of the Alfred Bordelon Partition and the Southeast corner of the tract herein described, and is hereinafter referred to as the Point of Beginning, and run North 0 degrees 30 minutes West 98 feet to a point; thence West 148 feet to a point; thence North 0 degrees 30 minutes West 148 feet to a point; thence East 148 feet to a point; thence North 0 degrees 30 feet West 595.5 feet to a point; thence West 1317.4 feet to a point; thence North 0 degrees 30 minutes West 550 feet to a point; thence East 1313.0 feet to a point; thence North 0 degrees 30 minutes West 50 feet to a point; thence West 239 feet to a point; thence North 1 degree 14 minutes West 256.8 feet to a point; thence North 5 degrees 15 minutes West 370 feet to a point; thence West 1046 feet to a point; thence North 2 degrees West 516 feet to a point; thence South 89 degrees West 26 feet to a point; thence North 2 degrees West 156 feet to a point; thence West 1006 feet to a point on the east line of a Canal; thence southeasterly following the meander of the Canal 2,951.5 feet to a point; thence South 0 degrees 20 minutes East 331.3 feet to a point; and thence 89 degrees 40 minutes East 1308.8 feet to the Point of Beginning.  The foregoing property is subject to (a) drainage permit recorded in COB A-35, page 422 and J-1, page 688; (b) pipeline servitude in favor of United Gas Corp. recorded in COB A-228, page 487; and (c) servitude of passage in COB A-309, page 559.  All recording references relate to the records of Avoyelles Parish, Louisiana.

Signed for identification with Act of Mortgage executed this  1st   day of May, 2003 by Lane J. Jeansonne and Jeanne Louis Jeansonne toand in favor of the United States of America acting through the United States Department of Agriculture in the sum of $322,393.35.

*Lane J. Jeansonne*
LANE J. JEANSONNE
(SS#: 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)

*Jeanne Louis Jeansonne*
JEANNE LOUIS JEANSONNE

# EXHIBIT "A" (cont.)

**LESS AND EXCEPT THE FOLLOWING DESCRIBED PROPERTY, TO-WIT:** **A certain tract of land presently owned by Lane Jeansonne and Jeanne Jeansonne located in SECTION 30, TOWNSHIP 1 SOUTH, RANGE 4 EAST, Avoyelles Parish, Louisiana, containing one acre more or less. Being fully described as follows: Starting at a point where the common boundary between the property of Paul Coulon and Lane Jeansonne intersects the Western boundary of the Brassette Lane rights of way; thence South along the Western edge of Brassette Lane a distance of 137.4 feet; to the Point of Beginning; thence South along the Western edge of the Brassette Lane a distance of 100.0 feet; thence from this point heading West a distance of 435.7 feet; thence from this point heading North a distance of 100.0 feet; thence from this point heading East a distance of 435.7 feet to the West edge of Brassette Lane right of way or the Point of Beginning. Being bounded, now or formerly, on the North, West and South by Lane Jeansonne and East by the Brassette Lane edge. See Plat of Survey by James W. Townsend, Registered Land Surveyor, dated August 10, 1995, of which copy attach.**

**Signed for identification with Act of Mortgage executed this 1st day of May, 2003 by Lane J. Jeansonne and Jeanne Louis Jeansonne toand in favor of the United States of America acting through the United States Department of Agriculture in the sum of $322,393.35.**

**LANE J. JEANSONNE**
**(SS#: 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)**

**JEANNE LOUIS JEANSONNE**



# CELSCO Civil Engineering Land Surveying

James W. Townsend, C.E., P.L.S.
(318)346-2098

310 Vine Street · Bunkie · LA 71322
(318)346-4330

## CERTIFICATE OF SURVEY

To all parties interested in title to premises surveyed:

I hereby certify that this plat correctly represents the survey made of the following described premises or tract of land to wit: 1.00 Acs., LOCATED IN SECTION 30, T/5-R4E, PARISH OF AVOYELLES, LA.

| | | |
|---|---|---|
| Scale: 1" = 100' | | Date: AUGUST 10, 1995 |
| For: KIM DUCOTE | | Registration Number: 3740 |
| Requested by: LANE JEANSONNE | | |

REF. SURVEY ~ CARL JUNEAU 4-30-83

BASIS OF BEARINGS ~ REF. PLAT

CLASSIFICATION OF SURVEY ~ CLASS "C"

NOW OR FORMERLY
PAUL COULON

1298.9'    S89°11'E

LANE    JEANSONNE

435.7'   S89°11'E

1.00 ACRE

319.7'  N89°11'W        116.0'

435.7'  N89°11'W

LANE    JEANSONNE

BRASSETTE LANE

S0°28'E   137.0'

S0°28'E   100.0

N0°28'W   100.0

(60.7' R/W)

STATE OF LOUISIANA
JAMES W. TOWNSEND
REG. No. 3740
REGISTERED
LAND SURVEYOR

ORIGINAL
IF STAMP APPEARS RED

# Avoyelles Parish Recording Page

**Samuel G. Couvillon**
**Clerk of Court**
312 N. Main
P. O. Box 219
Marksville, LA 71351
(318) 253-7523

**Received From :**
ROY, RENEE
P O BOX 501
MANSURA, LA 71350

**First MORTGAGOR**

JEANSONNE, LANE J

**First MORTGAGEE**

UNITED STATES DEPT OF AGRICULTURE

**Index Type :**  Mortgages

**Type of Document :** Special Mortgage

**Recording Pages :**    6

**Inst. Number :** 2006-00001239

**Book :**  553       **Page :** 458

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Avoyelles Parish, Louisiana

*Dolores F. Harris*
Deputy Clerk

On (Recorded Date) : 02/16/2006

At (Recorded Time) : 12:57:26PM



CLERK OF COURT
SAMUEL G. COUVILLON
Parish of Avoyelles
I certify that this is a true copy of the attached
document that was filed for registry and
Recorded 02/16/2006 at 12:57:26
Recorded in Book   553   Page 458
File Number 2006-00001239

Doc ID - 000435420006

*Dolores F. Harris*
Deputy Clerk

**Return To :**

Do not Detach this Recording Page from Original Document

**USDA**                                        *Position 5*
Form RD 1927-1 LA
(Rev. 11-99)

# REAL ESTATE MORTGAGE FOR LOUISIANA

STATE OF LOUISIANA _____

PARISH OF _____ AVOYELLES   } ss:

BE IT KNOWN that on the date hereinafter set forth before me *Renee Y. Roy*

_____

a notary public in and for the Parish of _____ AVOYELLES _____ , State of Louisiana,

duly commissioned and qualified, came and appeared _____ LANE J. JEANSONNE AND JEANNE L. JEANSONNE

(HUSBAND AND WIFE)

_____

of the Parish of _____ AVOYELLES _____ , State of Louisiana, whose post office

address is _____ 3055 HWY 107 SOUTH, COTTONPORT _____ , Louisiana _____ 71327 _____ .
herein called "Borrower", who declares and acknowledges indebtedness unto the United States of America, acting through the United States Department of Agriculture and its Parish office,

whose mailing address is _____ 313 N. MONROE ST., SUITE 3, MARKSVILLE, LA 71351 _____ , herein called the "Government" in the sum of _____ THREE HUNDRED TWENTY-TWO THOUSAND THREE HUNDRED NINETY-THREE AND 35/100 _____ Dollars ($ 322,393.35 )
the balance of unpaid principal remaining upon loan(s) to Borrower, with interest now due or to become due upon the principal, and upon any unpaid or deferred installments of interest added to the principal, which debts are evidenced by one or more certain promissory note (s) or assumption agreement (s) or any shared appreciation or recapture agreement, herein called "note" which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| | SEE ATTACHED | | |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in the Government regulations or the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Government;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument, this instrument shall secure payment of the note; but

And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to U.S.C. § 2001:

RD 1927-1 LA (Rev. 11-99) Page 1 of 4

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| May 01, 2003 | $ 48,600.00 | 3.75 % | May 01, 2023 |
| May 01, 2003 | $ 71,797.66 | 5.00% | May 01, 2029 |
| May 01, 2003 | $ 15,684.34 | 5.25% | May 01, 2023 |
| May 01, 2003 | $ 52,677.77 | 3.50% | May 01, 2018 |
| May 01, 2003 | $ 16,124.37 | 3.75% | May 01, 2018 |
| May 01, 2003 | $117,509.21 | 3.75% | May 01, 2018 |

NOW, THEREFORE, in consideration of the loan(s) and (a') at all times when the note is held by the Government, or in the event the Government should assign this instrument, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower declared that Borrower does by these presents specially mortgage, affect, and hypothecate unto and in favor of the Government the following-described property situated in the State of

                                                        AVOYELLES

Louisiana, Parish of _____ .


LOT 5 "0.16 ACRES"

A CERTAIN TRACT OR PARCEL OF LAND LOCATED IN SECTION 30,T1S,R4E, WARD 9 OF AVOYELLES PARISH,
LOUISIANA CONTAINING 0.16 ACRES AND DESIGNATED AS "LOT 5" ON PLAT OF SURVEY BY CARL J. JUNEAU,
PROFESSINAL LAND SURVEYOR, DATED JAUNARY 2006 AND ATTACHED HERETO.  NOW OR FORMERLY BOUNDED ON
THE NORTH BY LANE JEANSONNE, SOUTH BY LOT 4, EAST BY BRASSETTE LANE AND WEST BY LANE JEANSONNE,
SAID LOT 5 HAVING A FRONTAGE ON BRASSETTE LANE OF 45.25 FEET.
BEING A PORTION OF THAT PROPERTY ACQUIRED BY ROBERT DUCOTE FROM SKYLER BRASSETTE BY CASH DEED
FILED AUGUST 11, 1972 RECORDED IN COB A-250 PAGE 440 ENTRY NO. 250222.


This property is (is not) the family home.

together with all rents and other revenues or income therefrom, buildings, improvements, all appurtenances, servitudes, water, water rights, ways, privileges, prescriptions, and advantages thereto including the right to mining products, gravel, oil, gas, coal or other minerals) belonging or in anywise appertaining, hereinafter referred to as "the property". The property is so to remain specially mortgaged, affected and hypothecated until the full and final payment of all indebtedness secured hereby and the performance and discharge of each and every condition, agreement and obligation, contingent or otherwise, contained herein or secured hereby, and Borrower binds and obligates Borrower not to sell, alienate, or encumber the property to the prejudice of this act.

This act of mortgage further secures an obligation of the mortgagors, or their assignees, in a maximum amount of five thousand dollars ($5,000.00) for reimbursement to mortgagees, or other holders of the note(s), for any sums paid for taxes, assessments, premiums of insurance or any expenses for repairs, care, maintenance or other protection of the security.

AND BORROWER, for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns, WARRANTS that Borrower has good right and lawful authority to mortgage the property described herein, and that the property is free and clear of any lien, charge, or encumbrance thereon or affecting the title thereto except as shown herein, and hereby COVENANTS AND AGREES:

(1)  To pay promptly when due any indebtedness to the Government hereby secured.

(2)  To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3)  If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)  The Government may at any time pay any other amounts including advances for payments of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)  All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)  To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)  To pay when due all taxes, assessments, levies, liabilities, obligations, and encumbrances of every nature whatsoever that affect the property or the Government's rights and interests therein under this mortgage and promptly deliver to the Government without demand receipts or other acceptable evidence of such payments.

(8)  To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)  To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner, comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided by Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(16)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for

loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19) Borrower declares that in favor of the Government, and of any and all future holder or holders of the obligations secured hereby, as regards the property herein mortgaged, Borrower waives any and all homestead exemptions to which Borrower is or may be entitled under the constitution and laws of the state of Louisiana.

(20) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation or appraisal, of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition for approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(21) Borrower further agrees that the loans secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

(22) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair or property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial statute, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial statute, age or national origin.

(23) This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(24) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to _____ and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the post office address shown above).

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Thus done and passed in _Cottonport_ , Parish of _Avoyelles_ ,

State of Louisiana, aforesaid, on this _16_ , day of _Feb_ , _2006_ ,

in the presence of the undersigned competent witnesses, who signed their names with the said appears and me, notary, after due reading of the whole.

Witnesses:

_Cynthia Scott Ginther_

_Mary F. Ducato_

LANE JUDE JEANSONNE *(Borrower)*

JEANNE LOUIS JEANSONNE *(Co-Borrower)*

*Notary Public*

RD 1927 LA (Rev. 11-99) Page 4 of 4

# Avoyelles Parish Recording Page

**Samuel G. Couvillon**
**Clerk of Court**
312 N. Main
P. O. Box 219
Marksville, LA 71351
(318) 253-7523

**Received From :**
FARM SERVICE AGENCY
313 N. MONROE STREET
MARKSVILLE, LA 71351

**First MORTGAGOR**

JEANSONNE, LANE JUDE

**First MORTGAGEE**

UNITED STATES DEPT OF AGRICULTURE

**Index Type :**   Mortgages

**Type of Document :** Mortgage

**Recording Pages :**          10

**Inst. Number :** 2006-00006431

**Book :**  568          **Page :** 78

## Recorded Information

I hereby certify that the attached document was filed for registry and recorded in the Clerk of Court's office for Avoyelles Parish, Louisiana

*Deputy Clerk*

On (Recorded Date) : 09/07/2006

At (Recorded Time) :  2:27:20PM

Doc ID - 000746450010

CLERK OF COURT
SAMUEL G. COUVILLON
Parish of Avoyelles
I certify that this is a true copy of the attached
document that was filed for registry and
Recorded 09/07/2006 at  2:27:20
Recorded in Book  568  Page 78
File Number 2006-00006431

*Deputy Clerk*

**Return To :**

Do not Detach this Recording Page from Original Document

USDA
Form RD 1927-1 LA
(Rev. 11-99)

*Position 5*

# REAL ESTATE MORTGAGE FOR LOUISIANA

STATE OF LOUISIANA _____

PARISH OF _____
AVOYELLES

}ss:

BE IT KNOWN that on the date hereinafter set forth before me  *Renee Y. Roy*

_____

a notary public in and for the Parish of _____ AVOYELLES _____ , State of Louisiana,

duly commissioned and qualified, came and appeared _____

LANE JUDE JEANSONNE  AND   JEANNE LOUIS JEANSONNE

( HUSBAND AND WIFE )

of the Parish of _____ AVOYELLES _____ , State of Louisiana, whose post office

address is _____ 3055 HIGHWAY 107 SOUTH, COTTONPORT _____ , Louisiana ___ 71327 ___ .
herein called "Borrower", who declares and acknowledges indebtedness unto the United States of America, acting through
the United States Department of Agriculture and its Parish office,

whose mailing address is _____ 313 NORTH MONROE ST, SUITE 3, MARKSVILLE LA 71351 _____ , herein called the "Gov-
ernment" in the sum of __ One Hundred Thirteen & 42/100 Four Hundred Fifty Eight Thousand __ Dollars ($ 458,113.42 )
the balance of unpaid principal remaining upon loan(s) to Borrower, with interest now due or to become due upon the
principal, and upon any unpaid or deferred installments of interest added to the principal, which debts are evidenced by
one or more certain promissory note (s) or assumption agreement (s) or any shared appreciation or recapture agreement,
herein called "note" which has been executed by Borrower, is payable to the order of the Government, authorizes accelera-
tion of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| 09-07-2006 | $116,700.00 | 5.50% | 09-07-2007 |
| 09-07-2006 | $ 31,067.33 | 3.75% | 09-07-2021 |
| 09-07-2006 | $ 58,161.56 | 5.00% | 09-07-2021 |
| 09-07-2006 | $ 82,814.39 | 5.00% | 09-07-2028 |
| 09-07-2006 | $ 18,431.85 | 5.25% | 09-07-2022 |
| 09-07-2006 | $ 18,211.61 | 3.75% | 09-07-2021 |
| 09-07-2006 | $132,726.68 | 3.75% | 09-07-2021 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this
instrument may be increased as provided in the Government regulations or the note.)
    And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure
payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949,
or any other statutes administered by the Government;
    And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the
Government, or in the event the Government should assign this instrument, this instrument shall secure payment of
the note; but
    And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture
Agreement entered into pursuant to U.S.C. § 2001:

NOW, THEREFORE, in consideration of the loan(s) and (a') at all times when the note is held by the Government, or in the event the Government should assign this instrument, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower declared that Borrower does by these presents specially mortgage, affect, and hypothecate unto and in favor of the Government the following-described property situated in the State of

AVOYELLES

Louisiana, Parish of _____ .

SEE ATTACHED LEGAL DESCRIPTION

This property is (is not) the family home.

RD 1927-1 LA (Rev. 11-99) Page 2 of 4

**Lot 5 "0.16 ACRES"**
A certain tract or parcel of land located in Section 30, T1S, R4E, Ward 9 of Avoyelles Parish, Louisiana containing 0.16 Acres and designated as "Lot 5" on plat of survey by Carl J. Juneau, Professional Land Surveyor, dated January 2006 and attached hereto. Now or formerly bounded on the North by Lane Jeansonne, South by Lot 4, East by Brassette Lane and West by Lane Jeansonne, said Lot 5 having a frontage on Brassette Lane of 45.25 feet.
Being a portion of that property acquired by Robert Ducote from Skyler Brassette by Cash deed filed August 11, 1972 recorded in COB A-250 page 440 entry no. 250222.

In connection with my examination of title to the property described above, I have reviewed the mortgage conveyance and suit records of Avoyelles Parish, Louisiana.

1. Mortgage and Conveyance records of the Clerk of Court, for the Parish of Avoyelles, State of Louisiana, covering a period beginning October 1, 1945 and ending January 24, 2006.

Based solely upon a review of the records referred to above, and subject to the remarks, objection of requirements and noted below, I find good, valid and merchantable title to said property to be vested in Lane J. Jeansonne and Jeanne L. Jeansonne.

RE: Lane J. Jeansonne, et ux

# EXHIBIT "A"

## TRACT 1:

**LOT 1:** A certain tract or parcel of land with all buildings and improvements situated thereon, lying in the Northeast Quarter of the Northeast Quarter of SECTION 19, TOWNSHIP 1 SOUTH, RANGE 5 EAST, Avoyelles Parish, Louisiana, having a front of 70 feet, with a depth between parallel lines of 200 feet, and which is more particularly described as follows: Commence at a point common to the center line of Bayou Choupique, the southeast corner of the herein described lot and property owned now or formerly by Ryan St. Romain, et al, thence proceed North along the boundary of property formerly belonging to Ryan St. Romain, et al, a distance of 200 feet to a point , thence westerly, a distance of 70 feet running parallel to the center line of Bayou Choupique, to a point, thence in a southern direction a distance of 200 feet, parallel to the boundary line lying between the herein described tract and the Ryan St. Romain, et al, property as aforesaid to the center line of Bayou Choupique, thence, in an easterly direction threading the center line of Bayou Choupique, a distance of 70 feet to the Point of Beginning. Being bounded, now or formerly, as follows: North and West by Louis St. Romain, Sr., et ux, South by Bayou Choupique, and East by Ryan St. Romain, et al.

Being a portion of the property acquired by Louis J. St. Romain, et ux, per Deed dated April 18, 1931, recorded in COB A-53, page 84, records of Avoyelles Parish, Louisiana, and acquired by Elaine St. Romain Jeansonne, per inheritance from the Estate of Louis St. Romain, Sr. and Esia Mayeux St. Romain (See Affidavit of Death Domicile and Heirship, recorded in COB A-366, page 605).

**LOT 2:** A certain lot or parcel of land with all buildings and improvements thereon, situated in and forming a portion of the North Half of SECTION 19, TOWNSHIP 1 SOUTH, RANGE 5 EAST, Ward 8 of Avoyelles Parish, Louisiana, and being more particularly described as follows, to-wit:

Begin at a point in the centerline of Bayou Choupique, said point being in common with the southeast corner of property belonging to Boley Caldwell and the southwest corner of the property belonging to Elaine St. Romain Jeansonne. From said Point of Beginning proceed North 0 degree, 07 minutes West for a distance of 250 feet to a point. From said point thence proceed in an easterly direction for a distance of sufficient to meet the western boundary of the property acquired by Lane J. Jeansonne by deed dated February 24, 1989, recorded in Conveyance Book A-374, Document No. 89-1273. From said point proceed in a southerly direction along the western line of Lane J. Jeansonne tract, described hereinabove to a point being common with the southwestern boundary of the Lane J. Jeansonne tract hereinabove described and the centerline of Bayou Choupique. From said point proceed in a westerly direction along the southern boundary of the property belonging to Elaine St. Romain Jeansonne to a point, said point being the Point of Beginning.

Being a portion of the same property acquired by Louis St. Romain in an Act of Exchange dated June 23, 1944 and filed June 26, 1944 recorded in COB A-112, page 67, entry no. 85-386.

**TRACT 2:**

A certain tract or parcel of land containing 20 acres, being the West Half of the Northeast Quarter of the Northwest Quarter of SECTION 38, TOWNSHIP 1 SOUTH, RANGE 4 EAST, Ward 8, Avoyelles Parish, Louisiana, as more fully shown on the Plat of Survey by Blanchard J. Marchand dated August 18, 1973 and recorded in Conveyance Book A-270, page 845. Being the property acquired by Robert J. Ducote from Hansen D. Bordelon, Jr., et al by sale dated December 8, 1975 and recorded in Conveyance Book A-270, page 842, all references being to the records of Avoyelles Parish, Louisiana.

**TRACT 3:**

A certain tract or parcel of land containing 71.81 acres, together with all the buildings and improvements thereon, situated 2 miles south of Cottonport in the Ninth Ward of Avoyelles Parish, Louisiana, lying in and forming portions of SECTIONS 25 & 30, TOWNSHIP 1 SOUTH, RANGE 4 EAST, and being bounded, now or formerly, on the North by lands of Dewey Jeansonne, L. Gauthier, Curtis Ducote and Lance Ducote, on the East by lands of L. Gauthier, Darrel Mayeux, Curtis Ducote, Stafford Coulon and Lance Ducote and a Parish Road, on the South by land of Stafford Coulon and Lot 11 of the Alfred Bordelon Partition, and on the West by a Canal, all as more particularly shown on a Plat of Survey made by Ralph L. Gagnard, Registered Land Surveyor, dated March 11, 1989, and further described, according to said survey, as follows: Commence at a point on the West line of the Parish Road marking the Northeast corner of Lot 11 of the Alfred Bordelon Partition and the Southeast corner of the tract herein described, and is hereinafter referred to as the Point of Beginning, and run North 0 degrees 30 minutes West 98 feet to a point; thence West 148 feet to a point; thence North 0 degrees 30 minutes West 148 feet to a point; thence East 148 feet to a point; thence North 0 degrees 30 feet West 595.5 feet to a point; thence West 1317.4 feet to a point; thence North 0 degrees 30 minutes West 550 feet to a point; thence East 1313.0 feet to a point; thence North 0 degrees 30 minutes West 50 feet to a point; thence West 239 feet to a point; thence North 1 degree 14 minutes West 256.8 feet to a point; thence North 5 degrees 15 minutes West 370 feet to a point; thence West 1046 feet to a point; thence North 2 degrees West 516 feet to a point; thence South 89 degrees West 26 feet to a point; thence North 2 degrees West 156 feet to a point; thence West 1006 feet to a point on the east line of a Canal; thence southeasterly following the meander of the Canal 2,951.5 feet to a point; thence South 0 degrees 20 minutes East 331.3 feet to a point; and thence 89 degrees 40 minutes East 1308.8 feet to the Point of Beginning. The foregoing property is subject to (a) drainage permit recorded in COB A-35, page 422 and J-1, page 688; (b) pipeline servitude in favor of United Gas Corp. recorded in COB A-228, page 487; and (c) servitude of passage in COB A-309, page 559. All recording references relate to the records of Avoyelles Parish, Louisiana.

**LESS AND EXCEPT THE FOLLOWING DESCRIBED PROPERTY, TO-WIT:**  A certain tract of land presently owned by Lane Jeansonne and Jeanne Jeansonne located in SECTION 30, TOWNSHIP 1 SOUTH, RANGE 4 EAST, Avoyelles Parish, Louisiana, containing one acre more or less.  Being fully described as follows:  Starting at a point where the common boundary between the property of Paul Coulon and Lane Jeansonne intersects the Western boundary of the Brassette Lane rights of way; thence South along the Western edge of Brassette Lane a distance of 137.4 feet; to the Point of Beginning; thence South along the Western edge of the Brassette Lane a distance of 100.0 feet; thence from this point heading West a distance of 435.7 feet; thence from this point heading North a distance of 100.0 feet; thence from this point heading East a distance of 435.7 feet to the West edge of Brassette Lane right of way or the Point of Beginning.  Being bounded, now or formerly, on the North, West and South by Lane Jeansonne and East by the Brassette Lane edge.  See Plat of Survey by James W. Townsend, Registered Land Surveyor, dated August 10, 1995, of which copy attach.

## THE FOLLOWING HAVE BEEN RELEASED

Lot 1 "0.16 ACRES"
A certain tract or parcel of land located in Section 30, T1S, R4E, Ward 9 of Avoyelles Parish, Louisiana containing 0.16 Acres and designated as "Lot 1" on plat of survey by Carl J. Juneau, Professional Land Surveyor, dated January 2006 and attached hereto.
Now or formerly bounded on the North by Lane Jeansonne, South by Paul Smith, East by Lot 2 and West by Lane Jeansonne, said Lot 1 measuring 200 feet on its East and West boundaries and by 33.72 feet on its North and South boundaries.
Being a portion of a 71.81 acre tract acquired by Lane J. Jeansonne, Et Ux from a Quitclaim Deed from the Farmer's Home Administration filed on June 22, 1989 in COB Book A-377 page 271 records of Avoyelles Parish, Louisiana.



LOT 2 "1.17 ACRES"
A certain tract or parcel of land situated in Section 30, Township 1 South, Range 4 East, Ward 9 of Avoyelles Parish, containing 1.17 acres and designated as "Lot 2" on plat of survey by Carl J. Juneau, dated January 2006 and attached hereto. Being bounded now or formerly on the North by Lane Jeansonne, on the East by Lots 3 and 4, , on the South by Paul Smith and on the West by Lot 1. Said Lot 2 measuring 200 feet on its East and West lines and 254 feet on its North and South lines.
Being a portion of a 71.81 acre tract acquired by Lane J. Jeansonne, Et Ux from a Quitclaim Deed from the Farmer's Home Administration filed on June 22, 1989 in COB Book A-377 page 271 records of Avoyelles Parish, Louisiana.

LOT 3 "0.33 ACRES"
A certain tract or parcel of land situated in Section 30, Township 1 South, Range 4 East, Ward 9 of Avoyelles Parish, containing 0.33 acres and designated as "Lot 3" on plat of survey by Carl J. Juneau, dated January 2006 and attached hereto. Being bounded now or formerly on the North by Lot 4/ Bobby Ducote, on the East by Brassette Lane, , on the South by Paul Smith and on the West by Lot 2. Said Lot 3 having a frontage on Brassette Lane of 98 feet and measuring 148 feet on its North and South lines.
Being a portion of a 71.81 acre tract acquired by Lane J. Jeansonne, Et Ux from a Quitclaim Deed from the Farmer's Home Administration filed on June 22, 1989 in COB Book A-377 page 271 records of Avoyelles Parish, Louisiana.

together with all rents and other revenues or income therefrom, buildings, improvements, all appurtenances, servitudes, water, water rights, ways, privileges, prescriptions, and advantages thereto including the right to mining products, gravel, oil, gas, coal or other minerals) belonging or in anywise appertaining, hereinafter referred to as "the property". The property is so to remain specially mortgaged, affected and hypothecated until the full and final payment of all indebtedness secured hereby and the performance and discharge of each and every condition, agreement and obligation, contingent or otherwise, contained herein or secured hereby, and Borrower binds and obligates Borrower not to sell, alienate, or encumber the property to the prejudice of this act.

This act of mortgage further secures an obligation of the mortgagors, or their assignees, in a maximum amount of five thousand dollars ($5,000.00) for reimbursement to mortgagees, or other holders of the note(s), for any sums paid for taxes, assessments, premiums of insurance or any expenses for repairs, care, maintenance or other protection of the security.

AND BORROWER, for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns, WARRANTS that Borrower has good right and lawful authority to mortgage the property described herein, and that the property is free and clear of any lien, charge, or encumbrance thereon or affecting the title thereto except as shown herein, and hereby COVENANTS AND AGREES:

(1)  To pay promptly when due any indebtedness to the Government hereby secured.

(2)  To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3)  If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)  The Government may at any time pay any other amounts including advances for payments of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)  All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)  To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)  To pay when due all taxes, assessments, levies, liabilities, obligations, and encumbrances of every nature whatsoever that affect the property or the Government's rights and interests therein under this mortgage and promptly deliver to the Government without demand receipts or other acceptable evidence of such payments.

(8)  To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)  To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner, comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided by  Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government–whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(16)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for

loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19)  Borrower declares that in favor of the Government, and of any and all future holder or holders of the obligations secured hereby, as regards the property herein mortgaged, Borrower waives any and all homestead exemptions to which Borrower is or may be entitled under the constitution and laws of the state of Louisiana.

(20)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation or appraisal, of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition for approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(21)  Borrower further agrees that the loans secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

(22)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair or property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial statute, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial statute, age or national origin.

(23)  This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(24)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to ———————— and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the post office address shown above).

(25)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Thus done and passed in ——— MARKSVILLE ———, Parish of ——— AVOYELLES ———,

State of Louisiana, aforesaid, on this ——— 7TH ———, day of ——— SEPTEMBER ———, 2006 ———,

in the presence of the undersigned competent witnesses, who signed their names with the said appearer and me, notary, after due reading of the whole.

Witnesses:

_Monica M. Bordin_

_Melissa Moss_

Jane Jude Jeansonne                           (Borrower)

Jeanne Louis Jeansonne                        (Co-Borrower)

Renee Y Roy                                   Notary Public.
# 20352

RD 1927-1 LA (Rev. 11-99) Page 4 of 4

*Position I*

FSA 0440-04
(08-09-99)

**U.S. Department of Agriculture**
Farm Service Agency
**SECURITY AGREEMENT**
**(CHATTELS AND CROPS)**

I.  **THIS SECURITY AGREEMENT**, dated ___October 24, 2002___ is made between the United States of

America acting through the Farm Service Agency (called Secured Party) and ___Lane J Jeansonne___

and ___Jeanne L Jeansonne___ (called Debtor), whose mailing address is

___3055 Hwy. 107, Cottonport, LA 71327___.

II.  **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory note(s) or other instrument(s), and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory note(s) or other instrument(s), all of which are called "note", which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The note evidences a loan to Debtor, and Secured Party at any time, may assign the note and insure the payment thereof to any extent authorized by the Consolidated Farm and Rural Development Act or any other act administered by the Farm Service Agency and

It is the purpose and intent of this instrument that, among other things, at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced by the note, but as to the note and such debt shall constitute an indemnity security agreement to secure Secured Party against loss under its insurance contract by reason of any default by Debtor; and

**NOW THEREFORE**, in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment of the note, to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made or insured by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other act administered by the Farm Service Agency all with interest, (b) at all times when the note is held by an insured holder, to secure performance of Debtor's agreement in this instrument to indemnify and save harmless Secured Party against loss under its insurance contract by reason of any default by Debtor, (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this instrument, and the performance of every covenant and agreement of Debtor contained in this instrument or in any supplementary agreement:

**DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following collateral, including the proceeds and products thereof after this collateral:

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.*

FSA-0440-04 (08-09-99)                                                    (Page 2 of 7)

*Item 1.* All crops, annual and perennial, and other plant products now planted, growing or grown, or which are planted after this instrument is signed or otherwise become growing crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time after this instrument is signed if no fixed maximum period is prescribed by State law, on the following described real estate:

| Farm(s) or Other Real Estate *Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town or other Description |
|---|---|---|---|
| Est. of Forest Moreau | 8 | Avoyelles, LA | Cottonport |
| Jimmy Moreau | 4 | Avoyelles, LA | Cottonport |
| Edison J Moreau Jr. | 4 | Avoyelles, LA | Cottonport |
| Arlyn Jeansonne | 25 | Avoyelles, LA | Cottonport |
| William Ducote | 40 | Avoyelles, LA | Cottonport |
| Murry Jeansonne | 6 | Avoyelles, LA | Cottonport |
| Donald A Scallan | 98 | Avoyelles, LA | Cottonport |
| Jackie R Roy | 14 | Avoyelles, LA | Cottonport |
| Dianne Jusselin | 28 | Avoyelles, LA | Cottonport |
| Elson Gremillion | 48 | Avoyelles, LA | Cottonport |
| Lane Jeansonne | 54 | Avoyelles, LA | Cottonport |
| Paul Coulon | 12 | Avoyelles, LA | Cottonport |
| Dewey Jeansonne | 22 | Avoyelles, LA | Cottonport |
| Dennis Moreau | 4 | Avoyelles, LA | Cottonport |
| L. Poret | 53 | Avoyelles, LA | Cottonport |
| Reeves Plauche | 75 | Avoyelles, LA | Cottonport |
| Riley Plauche | 10 | Avoyelles, LA | Cottonport |
| N. Lacombe | 38 | Avoyelles, LA | Cottonport |
| Reeves Plauche | 20 | Avoyelles, LA | Cottonport |
| Leroy Gremillion | 24 | Avoyelles, LA | Cottonport |
| G & L Lemoine, LLC | 32 | Avoyelles, LA | Cottonport |
| Rudy Lacombe Sr | 28 | Avoyelles, LA | Cottonport |
| Mike Jeansonne | 30 | Avoyelles, LA | Cottonport |
| Sherril A Mayeux | 15 | Avoyelles, LA | Cottonport |
| Sherril A Mayeux | 26 | Avoyelles, LA | Cottonport |
| Jeansonne/Tjaden | 179 | Avoyelles, LA | Cottonport |

Including all peanut and tobacco poundage allotments existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the debtors to any subsequent party.

**\*Owner shown in related Financing Statement, except if informed of ownership change show reputed new owner.**

FSA-0440-04 (08-09-99)                                                              (Page 3 of 7)

*Item 2.*      All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions and accessions thereto, including but not limited to the following:

| Line No. | Quantity | Kind | Manufacturer | Size and Type | Condition | Year of Manufacture | Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Disc | IH | 475 21 ft | G | | |
| 2 | 1 | Tractor | Farmall | 1466 | G | 1970 | |
| 3 | 1 | Set Tanks & Racks | S & N | 150 gal | G | | |
| 4 | 1 | Spray Boom | S & N | 50 ft | G | 1995 | |
| 5 | 1 | Corn Header | IH | 854 | G | | 0730105U023069 |
| 6 | 1 | Planter | John Deere | 7100 6row | G | 1970 | 025203A |
| 7 | 1 | Truck | Ford | F700 | G | 1967 | F700UB41155 |
| 8 | 1 | Tractor | Case | 7130 | G | | JJA0029545 |
| 9 | 1 | Tanks & Racks | | 200 gal | G | | |
| 10 | 1 | Cottonpicker | John Deere | 9910 | G | | 003810 N |
| 11 | 1 | Shredder | Servis | 15 ft | G | | |
| 12 | 1 | Hi cycle Sprayer | John Deere | 700 | G | | 173 |
| 13 | 1 | Nurse Tank/Trailer/Pump | S & N | 1000 gal | G | | |
| 14 | 1 | Cultivator | Taylorway | 6 row | G | | |
| 15 | 1 | Tractor | IH | 484 | G | | 0378858 |

Any fixture described above is affixed or is to be affixed to the real estate described in *Item 1* of this instrument.

FSA-0440-04 (08-09-99)

*Item 3.*        All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following:

| Line No. | Quantity | Kind-sex | Breed | Color | Weight, average weight | Age or age Range | Brands or other identification |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

FSA-0440-04 (08-09-99)                                                         (Page 5 of 7)

*Item 4.*     All accounts, contract rights and general intangibles, as follows:

## III. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

A.     Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except (1) any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect, (2) any applicable landlord's statutory liens, and (3) other liens, encumbrances, security or other interests, as follows:

**HOLDER**                                                      **AMOUNT**     **LINE NO**

and Debtor will defend the collateral against the claims and demands of all other persons.  Reference to the above liens, encumbrances, security and other interests is for warranty purposes only and does not indicate their priority.

B.     Statements contained in Debtor's loan application(s) are true and correct; and Debtor will (1) use the loan funds for the purposes for which they were or are advanced, (2) comply with such farm and home management plans as may be agreed upon from time to time by Debtor and Secured Party, (3) care for and maintain the collateral in a good and husbandlike manner, (4) insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance, (5) permit Secured Party to inspect the collateral at any reasonable time, (6) not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party, and (7) not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this instrument.

C.     Debtor will pay promptly when due all (1) indebtedness evidenced by the note and any indebtedness to Secured Party secured by this instrument, (2) rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of liens searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest, (3) filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest, and (4) fees and other charges now or later required by regulations, of the Farm Service Agency.  At all times when the note is held by an insured holder, Debtor shall continue to make payments on the note to Secured Party, as collection agent for the holder.

D.     If the note is insured by Secured Party, Debtor will indemnify and save harmless Secured Party against any loss by reason of any default by Debtor.

E.     At all times when the note is held by an insured holder, any amount due and unpaid under the terms of the note to which the holder is entitled may be paid by Secured Party to the holder of the note for the account of Debtor.  Any amount due and unpaid under the terms of the note, whether it is held by Secured Party or by an insured holder, may be credited by Secured Party on the note and thereupon shall constitute an advance by Secured Party for the account of Debtor.  Any advance by Secured Party as described in this paragraph shall bear interest at the note rate from the date on which the amount of the advance was due to the date of payment to Secured Party, provided that Borrower shall be required to pay interest on only the principal portion of such advance unless otherwise provided in the regulations of the Farm Service Agency.

FSA-0440-04 (08-09-99)                                                                (Page 6 of 7)

    F.  Whether or not the note is insured by Secured Party, Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor.  All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

    G.  All advances by Secured Party as described in this instrument, with interest, shall be immediately due and payable by Debtor to Secured Party without demand at the place designated in the latest note and shall be secured by this instrument.  No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay.  Any payment made by Debtor may be applied on the note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

    H.  In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor will execute and deliver to Secured Party at any time, upon demand, such additional security instruments on such real and personal property as Secured Party may require.

## IV. IT IS FURTHER AGREED THAT:

    A.  Until default Debtor may retain possession of the collateral.

    B.  Default shall exist under this instrument if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this instrument or to observe or perform any covenants or agreements in this instrument or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of anyone of the parties named as Debtor.  Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. Upon any such default:

      1.  Secured Party, at its option, with or without notice as permitted by law, may (a) declare the unpaid balance on the note and any indebtedness secured by this instrument immediately due and payable, (b) enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment unusable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and (c) exercise any sale or other rights accorded by law.

      2.  Debtor (a) agrees to assemble the collateral and make it available to Secured Party at such time(s) and place(s) as designated by Secured Party, and (b) waives all notices, exemptions, compulsory disposition and redemption rights.

      3.  A default shall exist under any other security instrument held or insured by Secured Party and executed or assumed by Debtor on real or personal property.  Likewise, default under such other security instrument shall constitute default under this instrument.

    C.  Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Farm Service Agency, third to the satisfaction of indebtedness secured by this instrument, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any other obligations of Debtor owing to or insured by Secured Party, and sixth to Debtor.  Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to or insured by Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies.  Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

    D.  It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this instrument, no collateral covered by this instrument is or shall become realty or accessioned to other goods.

FSA-0440-04 (08-09-99)                                                                (Page 7 of 7)

E.  This instrument is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this instrument.

F.  If any provision of third instrument is held invalid or unenforceable, it shall not affect any other provisions, but this instrument shall be construed as if it had never contained such invalid or unenforceable provision.

G.  The rights and privileges of Secured Party under this instrument shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this instrument are joint and several and shall bind personal representatives, heirs, successors, and assigns.

H.  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured by this instrument and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

I.  Secured Party shall have the sole and exclusive rights as the secured party under this instrument, including but not limited to the power to grant or issue any consent, release, subordination, continuation statement or termination statement, and no insured holder shall have any right, title, or interest in or to the security interest created by this instrument or any benefits of it.

J.  SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.

K.  Failure by the Secured Party to exercise any right-whether once or often-shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.


_____ (SEAL)          _____ (SEAL)
Lane J Jeansonne                    *(Debtor)*      Jeanne L Jeansonne                  *(Debtor)*

## Louisiana Secretary of State
### UCC Filing Detail
### (Not a Certified Copy)

**Notice: All Filings after 2/28/2018 are subject to change or removal.**

**Original File#:** 05-022550 **FARM FILING**

**Filed:** 10/24/2002 at 11:18 AM

**Parish:** AVOYELLES

**Debtors: (2)**

| |
|---|
| LANE JEANSONNE<br>Tax ID: #####7228<br>3055 HWY 107 SOUTH<br>COTTONPORT, LA 71324 |
| JEANNE LOUIS JEANSONNE<br>Tax ID: #####6456<br>3055 HWY 107 SOUTH<br>COTTONPORT, LA 71324 |

**Original Secured Parties: (1)**

| |
|---|
| AVOYELLES COUNTY FSA OFFICE<br>Tax ID#: #####0000<br>P. O. BOX 490<br>MARKSVILLE, LA 71351 |

**Property:**

| |
|---|
| ALL EQUIPMENT OWNED NOW OR ACQUIRED LATER |

**Farm Product Information: (4)   – Joint Check Required**

| Name | Code | Parish | Year | Quantity | Loan Amount |
|------|------|--------|------|----------|-------------|
| COTTON | 1050 | AVOYELLES | ALL | ALL | ALL |
| SOYBEANS | 1270 | AVOYELLES | ALL | ALL | ALL |
| CORN | 1040 | AVOYELLES | ALL | ALL | ALL |
| SORGHUM GRAIN | 1260 | AVOYELLES | ALL | ALL | ALL |

**Brief Description:** ALL CROPS GROWN

**Subsequent Filings: (5)**

| Type | Details |
|------|---------|
| Clerk Correction: | 05- filed on 11/27/2002 at 8:58 AM<br>ZIP CODE FOR THE DEBTORS MAILING ADDRESS<br>**Brief Description:** ALL CROPS GROWN<br><br>Debtors: (2)<br>LANE JEANSONNE<br>Tax ID: #####7228Tax ID:   3055 HWY 107 SOUTH<br>COTTONPORT, LA 71327<br><br>JEANNE LOUIS JEANSONNE<br>Tax ID: #####6456Tax ID:   3055 HWY 107 SOUTH<br>COTTONPORT, LA 71327 |
| Amendment: | |

Direct Access - Filing Details

|  | 05-062355 filed on 9/22/2006 at 1:08 PM |
|---|---|
|  | SUBORDINATE LIEN ON ALL CROPS TO PAUL WALL FARM CENTER. |
|  | **Brief Description:** ALL CROPS GROWN |
| **Continuation:** | 05-071948 filed on 10/1/2007 at 2:09 PM |
| **Continuation:** | 05-122264 filed on 9/12/2012 at 10:28 AM |

Debtors: (2)
   LANE JEANSONNE
   Tax ID: #####7228Tax ID:    3055 HWY 107 SOUTH
   COTTONPORT, LA 71327

   JEANNE LOUIS JEANSONNE
   Tax ID: #####6456Tax ID:    3055 HWY 107 SOUTH
   COTTONPORT, LA 71327

Secured Parties: (1)
   AVOYELLES COUNTY FSA OFFICE
   Tax ID: #####0000
   P. O. BOX 490
   MARKSVILLE, LA 71351

**Continuation:**    05-172193 filed on 8/16/2017 at 9:58 AM

Print